## Michael Heaney v. City of Chicago.

### Gen. No. 11,630.

1. CIVIL SERVICE COMMISSION—*how far acts of, in discharging employee in classified service, subject to review.* In such case the court upon certiorari can only determine whether such commission had jurisdiction and whether it followed the form of procedure legally applicable to such case.

2. CIVIL SERVICE COMMISSION—*upon what questions findings of, conclusive.* The findings of such commission with respect to the duties of the employee discharged and with respect to his neglect in their performance are conclusive and not subject to review upon certiorari.

3. WRITTEN CHARGES—*when, not insufficient to confer jurisdiction upon civil service commission.* A charge against a paving.inspector in language as follows: " Negligence and incompetency in the paving of Jefferson street," does not so lack precision or particularity as to prevent such commission from acquiring through it jurisdiction to try the alleged offender or as to show that in so trying him it did not fully conform to proceedings legally applicable in such case.

4. REMOVAL FROM CLASSIFIED SERVICE—*what ground for.* Negligence and incompetency on the part of an officer in regard to some particular work which it was his duty to do or to supervise and look after, are causes for which the commission may properly allow a removal.

5. REMOVAL FROM CLASSIFIED SERVICE—*what constitutes acquiescence in.* Long inaction, it is intimated, would constitute such laches as would preclude a petitioner from obtaining reinstatement after removal by the civil service commission.

Certiorari proceeding. Error to the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge, presiding. Heard in this court at the March term, 1904. Affirmed. Opinion filed December 15, 1904.

**Statement by the Court.** This is a writ of error to the Superior Court of Cook county, seeking to reverse a judgment of that court quashing a writ of certiorari previously issued by that court on the petition of the plaintiff in error, Michael Heaney, and directed to the Civil Service Commissioners of the city of Chicago and their secretary. The judgment also dismissed Heaney's petition at his costs.

The petition on which the writ was issued set forth the position of the petitioner Heaney as inspector of paving in Chicago for many years; that his office was in the classified Civil Service of the city under the Civil Service Act, and that he, the petitioner, was duly appointed under that Act; that on August 22, 1901, the president of the Board of Local Improvements of Chicago filed written charges against him with the Civil Service Commission as follows:

"AUG. 22, 1901.

To the Honorable, the Civil Service Commission :

GENTLEMEN : I hereby deem it necessary to remove

Michael Heaney, general paving inspector, from the service for the following reasons: For negligence and incompetency in the paving of Jefferson street from Madison street to Van Buren street, which work was done in November and December, 1899. I have suspended Mr. Heaney pending the decision of your Commission on such charges and have furnished him a copy of the same, and have notified him that he has fifteen days in which to apply for a hearing on said charges.

Yours very truly,<br>BERNARD F. ROGERS,<br>President."

That thereafter, on September 13, 1901, the Civil Service Commission found the charges proved and ordered that the petitioner be removed from his office; that he was on September 25, 1901, removed from his office; that his duties in the office of general paving inspector were, as the title and name imply, the inspection of the paving of streets and the general supervision over the inspection of the same by sub-inspectors, but that it was not his duty to pave the streets; that the paving of said streets, and particularly Jefferson street from Madison to Van Buren street, was let upon a contract to certain contractors; that because he had no duties "in the paving of Jefferson street from Madison street to Van Buren street," and because he did none of the work of paving the same, the said Civil Service Commission had no jurisdiction to hear said charges, and its finding was without jurisdiction and void.

The petitioner further asserted in his petition that his office has not since his said discharge been held by any other person; that he has not violated any of the rules of the Civil Service Commission or of the Board of Local Improvements, or any order or direction of the engineer in charge of the work of paving Jefferson street, and that he knows of no reason why he should not remain in his position; that no appeal is allowed from the decision of the Commission, and that he has no remedy but certiorari.

The writ being issued on this petition, the Commission

made its return, showing that after the charges were made
against the plaintiff in error, as above set forth, he, on
August 28, 1901, came before the Commission and asked
for a hearing on the charges preferred against him; that a
hearing was set for September 9, 1901, and upon that day
such hearing was had, in which plaintiff in error partici-
pated personally and by counsel; that witnesses were
sworn and heard, including the plaintiff in error; that
plaintiff in error, by counsel, agreed to have the charges
against him heard jointly with those against a sub-paving
inspector against whom charges had been preferred at the
same time; that the Board of Local Improvements was also
represented at said hearing by its president and counsel;
that the hearing continued on September 10, 1901, and
witnesses, including plaintiff in error, then testified; that
at that time it was agreed by all parties concerned that the
Commission should make a personal examination of the
street mentioned in the charges; that on September 12,
1901, the Commission, in company with the defendants and
other parties concerned in the case, including the attorneys
on both sides, met on said Jefferson street and examined the
pavement mentioned in the charges; and that on Septem-
ber 20, 1901, the hearing of the charges was resumed; that
evidence was then heard and an argument made by counsel
for plaintiff in error, and the case was taken under advise-
ment by the Commission; that on September 23, 1901, the
Commission in regular session made an order reciting the
charges and steps taken at the hearing, and finding "that
Michael Heaney is guilty as charged, and guilty of negli-
gence and incompetency in the matter of the paving of
Jefferson street from Madison street to Van Buren street
in the city of Chicago," deciding "that said Michael Heaney
shall be removed from his position as general paving in-
spector of the city of Chicago," and ordering "The Board
of Local Improvements to enforce the said finding and de-
cision."

The return further shows a subsequent communication
which passed between the plaintiff in error and the Civil

Service Commission, by which the plaintiff in error complained that injustice was done to him in holding him responsible for there having been a bad quality of cement put on Jefferson street between Madison and Van Buren streets, and shows that such communication was placed on file by the Commission.

January 5, 1903, the matter came on to be heard before the Superior Court, and it was ordered that the writ of certiorari should be quashed and the petition of plaintiff in error dismissed.

In this court it is assigned as error in the action of the Superior Court, that it quashed the writ and dismissed the petition, when it should have quashed the proceedings of the Civil Service Commission as prayed in the petition.

A. I. GASH and JAMES H. HOOPER, for plaintiff in error.

EDGAR BRONSON TOLMAN, Corporation Counsel, and JOHN W. BECKWITH, Assistant Corporation Counsel, for defendant in error.

MR. JUSTICE BROWN delivered the opinion of the court.

. We have nothing to do in this case with the justice of the finding which the Civil Service Commission made against the plaintiff in error, nor whether it erred in its decision on the facts, or even whether it erred in its rulings of law, if it made any, during the progress of the hearing which it gave him, or in its application of the law to the facts; nor had the Superior Court. As the Supreme Court said in The People v. Lindblom, 182 Ill. 241, the only questions open in the Superior Court' were whether the Civil Service Commission had jurisdiction, and whether it followed the form of proceedings legally applicable in such cases. This, counsel for plaintiff in error seem to admit in their argument, but they charge that the Civil Service Commission had no jurisdiction to try plaintiff in error on the charges set forth in the letter of the president of the Board of Local Improvements to the Civil Service Commission under date of August 22, 1901: first, because such charges do not state a

sufficient cause of removal; second, because it was not the
duty of the plaintiff in error to pave the street designated,
and the return does not set forth that it was his duty to
inspect the paving in the street designated; and, third, be-
cause the return does not show that the particular street
designated was in the district of the city over which peti-
tioner was a paving inspector. We do not think this posi-
tion tenable. The office from which plaintiff in error was
suspended, pending these charges, by the letter making
them, was designated in that letter as "general paving
inspector." The petitioner rightly says in his petition for
the writ of certiorari, that this title and name imply that
his duties were the inspection of the paving of streets in the
city of Chicago and the general supervision over the inspec-
tion of the same by sub-inspectors.

The charges were "negligence and incompetency in the
paving of Jefferson street from Madison street to Van
Buren street, which work was done in November and De-
cember, 1899." If the plaintiff in error had no duties at
all in .connection with the paving of Jefferson street, he
could have been guilty of no negligence and incompetency
in regard to such paving or the inspection of it; and the
proof of this before the Commission would have been a
defense before that body. But the question of whether or
not he had such duties, as well as the question of his negli-
gence and incompetency in the discharge of them if he had
them, would have been for the Commission to decide on
the evidence, and not for the Superior Court on the writ of
certiorari, or for this court on this writ of error. *Prima
facie* there is certainly no inconsistency between such duties
and those of a "general paving inspector" in Chicago.
Nor if the charge is to be construed as "negligence and
incompetency *in the matter of* the paving of Jefferson
street," etc., does it so lack precision or particularity as to
prevent the Civil Service Commission from acquiring
through it jurisdiction to try the alleged offender, or as to
show that in so trying him it did not follow the form of
proceedings legally applicable in such cases.

Heaney v. City of Chicago.

The statute is that "no officer or employe in the classified civil service of any city, who shall have been appointed under said rules and after said examination, shall be removed or discharged *except for cause, upon written charges and after an opportunity to be heard in his own defense.* Such charges shall be investigated by or before said civil service commission, or by or before some officer or board appointed by said commission to conduct such investigation." This, of course, implies that the written charges must state a "cause" for his removal, which must be some substantial shortcoming which renders his continuance in his office or employment in some way detrimental to the discipline or efficiency of the service. But when that is conceded, a wide latitude is given to the Commission as to what will justify the separation from the service, provided only, the accused has been given the proper opportunity to know the nature of the charges, and to be heard in his own defense.

That negligence and incompetency on the part of an officer in regard to some particular work which it has been his duty to do or to supervise and look after, are causes for which the Commission may properly allow a removal, cannot be seriously doubted. To hold otherwise would be to make of the Civil Service Act something very different from what the Legislature intended, and a menace instead of a protection to public interests.

It is contended, however, that the particular acts or omissions which constituted the evidence of the negligence or incompetency should have been specified in the written charges, to give jurisdiction to the Commission, or to render the proceedings regular and "legally applicable." We do not so understand the law. "Negligence and incompetency" shown in a given piece of work is a cause sufficiently specifically designated; the particular occurrences or defaults which show the negligence and incompetency are evidence that such cause, viz., "negligence and incompetency," existed. In analogous cases, the ruling of the court of last resort in this state has always been in accordance

with this reasoning. People v. Higgins, 15 Ill. 110; Wilcox et al. v. People, etc., 90 Ill. 186; People v. Mays, 117 Ill. 257. Nor do we regard the cases cited by counsel for plaintiff in error from New York, inconsistent at all with this holding.

In People ex rel. v. The Mayor, etc., 19 Hun, 441, the Supreme Court of New York, at Special Term, determined in effect that one Nichols, a police commissioner of the city of New York who had been removed by the mayor, with the approval of the governor, had not had an opportunity to be heard before being so removed, and that there had been no investigation into the charges against him, although the law provided that one in his position could only be removed "for cause and after opportunity to be heard." The court says: "'For cause' means that a reason must exist which is personal to the individual sought to be removed, which the law and a sound public opinion will recognize as a good cause for his no longer occupying the place. * * * It is a fact that the certificate sent by the mayor to the governor stated reasons which, if they be true, justified action, *provided the steps which the law requires to be taken in their ascertainment were followed.*" Reference to the certificate sent to the governor by the mayor, which appears in the opinion, quite clearly shows that the "reasons" which, in the opinion of the court, "justified action" in this case, were certainly as broadly stated as in the charges in the case at bar. The case of The People v. Nichols, 79 N. Y. 582, was a branch of the same litigation which reached the Court of Appeals, and there it was held, *apropos* of the removal without investigation or trial, that the proceeding to remove "must be instituted upon specific charges sufficient in their nature to warrant the removal, and then, unless admitted, proven to be true." It was not held in either court that the charges as made were too general to furnish ground for a proper investigation.

The language of Chief Justice Parker of Massachusetts in 1828, in the case of Murdock, appellant, 7 Pickering, 303, " We hold that by analogy to trials on criminal accusations

in courts of justice and the principles of the constitution, no man can be deprived of his office, *which is a valuable property*, without having the offense with which he is charged 'fully and plainly, substantially and formally' described to him," which language is quoted in the Supreme Court opinion in the Nichols case, at Special Term (19 Hun, 441), and is repeated by counsel for plaintiff in error in their brief, as though it were the gist of such opinion—was used under very different circumstances and in a very different case from those at bar.    The founders of an eleemosynary educational institution (The Andover Theological Seminary) had heavily endowed it, provided for appointments of professors for life, provided for a board of trustees, which alone should have the power of removal, and then only "for scandalous immorality, mental incapacity, *gross negligence*, or any other just and sufficient cause;" provided for supervising power over such removals by a board of visitors, and for appeal from the board of visitors by an aggrieved professor to the Supreme Judicial Court of Massachusetts.    The Legislature of Massachusetts, by special statute, had given effect to this provision of the founders of the seminary by conferring on the Supreme Court of Massachusetts the requisite power to hear and determine such appeals.    It was on such an appeal that this language of Chief Justice Parker was used about "analogy to trials on criminal accusations in courts of justice."    It will be noticed that Chief Justice Parker speaks of the office held by Professor Murdock, the appellant, as "a valuable property," of which it was proposed to deprive him.    It may have been so, but neither the office of "general paving inspector" in the city of Chicago, nor any other public office or employment in the State of Illinois is "property."    Donahue v. County of Will, 100 Ill. 94; The People v. Kipley, 171 Ill. 44.    But even in the case of Murdock, appellant, *supra*, Chief Justice Parker, after using the language which we have quoted, goes on to say that while three out of four of the articles exhibited against Dr. Murdock are vague and indefinite, the fourth is "direct and unequivocal and in the

very words of the founders, as a cause for a removal from
office. It is *gross neglect of duty.*" That he continues in a
semi-detached sentence, "and the facts and circumstances
are stated which go to justify the charge," by no means
implies that if they had not been so stated, the charge
would have been insufficiently "direct and unequivocal."
Manifestly the case of "Murdock, appellant," etc., is not an
authority for the contention of plaintiff in error.

The point made in his behalf, that the charges speak of
his negligence and incompetency in the paving of Jefferson
street, which was plainly not a cause for which he could
be removed, inasmuch as it was not his duty as a paving
-inspector to pave the streets, and that the paving of Jef-
ferson street from Madison to Van Buren street was let
upon a contract to certain contractors, we consider to be—
as it is designated by counsel for defendant in error—a
mere quibble upon words.

The object of requiring written charges before an officer
or employee of the city under the protection of the Civil
Service Act can be removed, is simply to apprise him with
reasonable certainty of the accusations he must meet on his
trial; it is merely a means to the end that he should have
a fair opportunity to defend himself—not an end in itself.
It is contrary to common sense to suppose that a general
paving inspector of the city of Chicago accused of "negli-
gence and incompetency in the paving of Jefferson street,"
etc., would not know from that language that the negli-
gence and incompetency charged was "in the matter of"
"the paving of Jefferson street," or "in the inspection of"
"the paving of Jefferson street." The plaintiff in error
did know it, and showed immediately that he knew it. He
did not defend himself on the ground that he had no duties
concerning the inspection of the paving on Jefferson street,
nor make any request for more specific charges. He vol-
untarily appeared before the Commission, asked for a
hearing, and, apparently, manfully and straight-forwardly
defended himself on the merits. The Commission found
against him, and in so doing, whatever may have been the

Alminowicz v. The People.

justice or injustice of their finding—with which, as we have said, the courts have nothing to do, and concerning which, therefore, we have no means of knowledge—we do not think it exceeded its jurisdiction or "failed 'to follow the form of proceedings legally applicable in such cases." We should, on the foregoing reasoning, affirm the judgment of the Superior Court even had the writ of certiorari been applied for promptly after the removal of plaintiff in error from his office or employment.

We think it proper to say, however, that we regard as by no means without force the suggestion of counsel for the city, that a long acquiescence in the action of the removing power by a person alleging himself to be aggrieved by his removal from the public service, should be held to have worked through laches a forfeiture of any right he might otherwise have had to be reinstated. There is sound basis, as it seems to us, for such a holding in the grave public inconvenience that might result from a different course applied to the employees of a city like Chicago. It is not, however, necessary for us to decide the question raised by this suggestion, in the case at bar.

The judgment of the Superior Court is affirmed.

*Affirmed.*