### Peter J. Joyce v. City of Chicago, et al.
#### Gen. No. 11,806.

1. CIVIL SERVICE COMMISSION—*effect given to record of.* The record of proceedings had before the Civil Service Commission as finally returned, imports absolute verity and is taken as conclusive.

2. CIVIL SERVICE COMMISSION—*how far decision of, reviewed.* Where the finding and judgment of a Civil Service Commission is

sought to be reviewed, the only questions which may be considered are, did the Civil Service Commission have jurisdiction of the cause and did it follow the form of proceedings legally applicable in such cases?

'3. CLASSIFIED SERVICE—*what sufficient cause for removal from.* Making a false official return, that is to say, the turning in of an expense account in excess of the amount actually expended, is sufficient cause for the discharge of a police officer from the classified civil service.

4. WRITTEN CHARGES—*what accuracy not required of, under Civil Service Act.* The charges and specifications made against a police officer under the Civil Service Act need not have the accuracy of an indictment. Their object is simply to apprise the officer or employe accused with reasonable certainty of the charges against him, so that he may have a fair opportunity to defend himself.

*Certiorari* proceeding. Appeal from the Circuit Court of Cook County; the Hon. FREDERICK A. SMITH, Judge, presiding. Heard in this court at the October term, 1904. Affirmed. Opinion filed March 13, 1905.

**Statement by the Court.** This is an appeal from the Circuit Court of Cook County seeking to reverse a judgment of that court quashing a writ of *certiorari* previously issued by it on the petition of the appellant, Peter J. Joyce, and directed to the Civil Service Commissioners of the City of Chicago.

The petition on which the writ was issued set forth, as its material allegations, that the petitioner, Joyce, had been a member of the police department of Chicago for eighteen years, and was then lieutenant of police; that on August 17, 1901, the superintendent of police filed written charges against him with the Civil Service Commissioners, charging him with "making a false official report, and conduct unbecoming a police officer in violation of rules 27 and 67, respectively, of the Book of Rules and Regulations governing the department of police;" that the specifications filed with said charges showed that each act charged was done, if at all, as a notary public for Cook County, and not as a police officer; that he appeared before said Civil Service Commission and raised the question of the jurisdiction of said tribunal to try him for acts alleged to have been done as a notary public; that the Civil Service Commissioners

on August 31, 1901, found him guilty as charged, and recommended to the superintendent of police and the mayor his dismissal from the police service; that in entertaining said charges and specifications, in sitting in said trial, in hearing the evidence, and in finding the petitioner guilty, the commissioners exceeded their lawful jurisdiction, and that the petitioner has no remedy and no way to have said finding and recommendation set aside or reversed except by writ of *certiorari*.

The writ was issued on this petition. The commissioners made return thereto, which was filed in the Circuit Court September 21, 1903. The return showed the examination of the petitioner, Joyce, for promotion to the rank of lieutenant of police by the Civil Service Commission, his certification for appointment to that position by the Commission, and the report of his promotion to that office filed with the Commission by the appointing officer. It further showed that certain written charges with specifications in writing were filed against the petitioner in the office of the Civil Service Commission by the general superintendent of police, and set out the charge and specification in full, as follows:

"Charge: Making a false official report and conduct unbecoming a police officer, in violation of rules 27 and 67, respectively, of the Book of Rules and Regulations governing the Department of Police.

"Specification: On June 6, 1901, Lieutenant Peter J. Joyce, of the Detective Bureau, wrote out for Patrolman John J. Tracy of his command, a Messenger's Expense Account for the return of Joseph Larkin, a fugitive from justice, from Cleveland, Ohio, to this city.

"Lieutenant Joyce discussed the illegality of the claim made in said expense account with Officer Tracy, which amounted to $75.80, this amount being $48.40 in excess of the actual expenses, and notwithstanding the scruples of Officer Tracy, Lieutenant Joyce filled out the blank known as 'Messenger's Expense Account,' including form of affidavit, and affixed thereto the notarial seal, without requir-

ing Officer Tracy to swear to the truth of the statements made in connection with said Messenger's Expense Account.

"Said Messenger's Expense Account, together with necessary correspondence, was forwarded to the Secretary of State by Lieutenant Joyce, who instructed Officer Tracy in everything connected with said Expense Account, and added : ' This is a kind of dangerous affair, but it is done repeatedly. Your check will come later, and you can come in and see me, and I will tell you what to do with it.'

"On receipt of the draft for $75.80, claimed in Expense Account, from the Secretary of State, Officer Tracy turned it over to his partner, Sergeant Cramer, to be disposed of. In the distribution Lieutenant Joyce is said to have gratefully received from Detective Sergeant Cramer $5 for his share in the transaction."

It further showed that a hearing was had in August, 1901, on said charges, before the Commission; that the petitioner was present and was represented by counsel; that numerous witnesses were heard under oath; that on August 31, 1901, a finding and decision was made by said Commission, finding the charges and specifications proved, and deciding that said Joyce should be removed from his position as lieutenant, and from said department of police, and ordering the general superintendent of police to enforce the findings and decision. March 10, 1904, the matter came on to be heard before the Circuit Court, and it was ordered that the writ of *certiorari* should be quashed.

In this court it is assigned as error in the action of the Circuit Court that it quashed the writ when it should have quashed the proceedings of the Civil Service Commission, as prayed in the petition; that it rejected proper evidence offered by appellant, and did not take judicial notice of the records and files of the Criminal Court of Cook County.

A bill of exceptions was signed and allowed by the trial judge in the Superior Court, by which it appears that the court received in evidence when offered by the petitioner, certain rules and regulations of the police department as published in a book produced in court, and certain ordi-

nances published in volume 1 of the Revised Code of
Chicago, also produced in court, and a rule made by the
Civil Service Commission of Chicago, concerning a police
officer's absence from duty and the penalty therefor, con-
tained in an annual report of said Commission produced,
and that the court refused to receive in evidence when so
offered by the petitioner certain files of the Criminal
Court of Cook County, purporting to be an indictment,
record of verdict and judgment in the case of The People
of the State of Illinois v. Joyce, and which counsel for
petitioner asserted to be " an indictment for the same al-
leged offense and acts complained of before the Civil Ser-
vice Commission, a verdict of not guilty, and a judgment
of acquittal and discharge."

A. D. GASH and JAMES H. HOOPER, for appellant.

COLIN C. H. FYFFE, for appellee; EDGAR BRONSON
TOLMAN, Corporation Counsel, of counsel.

MR. JUSTICE BROWN delivered the opinion of the court.
The bill of exceptions in this cause is an anomaly. The
trial on a common-law writ of *certiorari*, such as is the
writ involved here, must be solely on inspection of the
record returned. The only questions which the Circuit
Court could properly ask, were: Did the Civil Service
Commission have jurisdiction in this case? And, did it
follow the form of proceedings legally applicable in such
cases? And these it should determine from the record it-
self; evidence *de hors* the record could not be properly in-
troduced by either party. If the return in *certiorari* is not
complete, there are methods of compelling its completion,
which the court issuing the writ will adopt on proper
motion of the party aggrieved. But the record as finally
returned imports absolute verity, and is taken as con-
clusive. Blair v. Sennott, 134 Ill. 78; Smith v. Commis-
sioners of Highways, 150 Ill. 385–391; Drainage Commis-
sioners v. Volke, 163 Ill., 243; People ex rel., etc., v. Lind-

blom, 182 Ill. 241; Heaney v. City of Chicago, 117 Ill. App. 405.

The Circuit Court had nothing to do with the justice of the finding which the Civil Service Commission made against appellant, nor whether it erred in its decision on the facts, or in its application of the law to those facts, nor have we.

This renders unnecessary any further allusion to the evidence rejected by the Circuit Court, and equally any allusion to that which was received and appears in the bill of exceptions. The latter neither helps nor hinders the appellant.

By the return it appears that the petitioner was in the classified Civil Service of Chicago. It appears that a charge was made against him by the superintendent of police of making a false official report, and of conduct unbecoming a police officer. It appears also that the appellant had due notice of this, and appeared personally and by counsel before the Commission, and had a full hearing; that the Commission found him guilty of the charges preferred and ordered him to be dismissed from the service by the proper officer. We see nowhere any justification for a finding that the Civil Service Commission exceeded its jurisdiction, or that it did not follow the form of proceedings legally applicable.

Before the Civil Service Law was enacted, a police officer of the city of Chicago was subject to arbitrary discharge by the mayor, although such removal must be reported to the council.

The Civil Service Act to prevent removal for political reasons, provided that no person in the classified service could be removed from his office or employment, "except for cause upon written charges, and after an opportunity to be heard in his own defense." This implies, of course, that the written charges must state a "cause" for removal and that this cause must be some substantial shortcoming, which renders his continuance in his office or employment in some way detrimental to the discipline or efficiency of

the service.   But, as we said in Heaney v. Chicago, *supra*, when that is conceded a wide latitude is given to the Commission as to what will justify the separation from the service, provided only, the accused has been given the proper opportunity to know the nature of the charges and to be heard in his own defense.

To argue that no cause for such separation is sufficient unless it is shown to have been set down in some book of "Rules and Regulations," or some code adopted by the Civil Service Commission itself, or to say that "making a false official return," and "conduct unbecoming a police officer," are not sufficient causes, seems to us frivolous.   If this construction were to be given the Civil Service Act, and contentions of this sort upheld, the act would be subversive of good municipal government, instead of an aid to it.

Even if the specifications appended to the charge had not contained in themselves a substantial cause, the petitioner could take no advantage from that—if on his appearance and full hearing the Commission had found him guilty of the general charge, and that general charge had stated a good cause.   The charges and specifications need not have the accuracy of an indictment.   Their object is simply to apprise the officer or employee accused with reasonable certainty of the charges against him, so that he may have a fair opportunity to defend himself.   But the specifications clearly enough describe an offense quite sufficient to warrant the petitioner's discharge.   The Act of February 16, 1874, to revise the law in relation to fugitives from justice does not, as counsel assumes, provide that the expenses which shall be paid out of the State treasury on the certificate of the governor and warrant of the auditor, shall include twelve cents a mile for all necessary travel in returning fugitives.   It provides that the actual expenses up to and not exceeding twelve cents a mile shall be thus paid. The distinction is very obvious.   To certify to twelve cents a mile when the actual expense was less, was "grafting" and pilfering—truly "a kind of dangerous affair."   If the pe-

titioner was guilty of it, or of any participation in it, either entirely for the benefit of a brother officer, or partly for his own, he was guilty "of conduct unbecoming a police officer," and was rightfully and justly discharged. Whether he was so guilty, we have no means of knowing, but the Civil Service Commission found him guilty, and we have no power, nor had the Circuit Court any power, to review its judgment in this regard.

The judgment of the Circuit Court quashing the writ of *certiorari* in question is affirmed.

*Affirmed.*