Daniel D. Murphy, Appellant, v. Thomas J. Houston et al., Civil Service Commissioners of the City of Chicago, Appellees.

Gen. No. 32,606.

Opinion filed November 19, 1928. Rehearing denied and opinion modified December 3, 1928.

TAYLOR, MILLER, BUSCH & BOYDEN, for appellant.

SAMUEL A. ETTELSON, Corporation Counsel, FRANCIS J. VURPILLAT, Assistant Corporation Counsel, and

John F. Tyrrell, for appellees; Francis J. Vurpillat, of counsel.

Mr. Justice Matchett delivered the opinion of the court.

This is an appeal from an order of the circuit court quashing a writ of certiorari theretofore issued upon petition of the appellant, Daniel D. Murphy, to secure a review of a record of the civil service commission of the city of Chicago, which on August 13, 1927, found the petitioner guilty of certain charges filed by the superintendent of police of the city of Chicago on June 29, 1927, and ordered that he be discharged from the service.

Murphy, the record shows, entered the classified civil service of the city of Chicago as a patrolman some 20 years prior to the filing of the charges. He was promoted by civil service examinations successively until he attained the position of captain. No other charge during the period of his service was preferred against him. He was never reprimanded.

It is urged for reversal that the record and proceedings failed to show that the civil service commissioners had jurisdiction to enter the finding, (1) because the record failed to show cause was alleged or proved sufficient to justify the finding and removal of the petitioner; (2) because the record failed to show petitioner was afforded an opportunity to be heard in his own defense as that phrase is used in section 12 of the Civil Service Act (see Cahill's St. 1927, ch. 24, ¶ 697); (3) because the record failed to show jurisdiction to enter the finding, in that it showed the civil service commissioners proceeded contrary to the essential requirements of the law.

Said section 12 of the Civil Service Act, Cahill's St. ch. 24, ¶ 697, provides that an employee holding a position with the city of Chicago under the provisions of that act may not be removed "except for cause, upon

written charges and after an opportunity to be heard in his own defense."

The leading case construing this section of the Civil Service Act is *Funkhouser v. Coffin*, 301 Ill. 257, in which the rules of law applicable are stated after a review of the authorities. It was there held that the only judgment to be rendered in a proceeding of this kind is either that the writ be quashed or the record of the proceedings be quashed, and it was said the purpose of the common-law writ of certiorari "is to have the entire record of the inferior body brought before the court that it may be inspected, to determine whether it had jurisdiction, or had exceeded its jurisdiction, or had failed to proceed according to the essential requirements of the law, where no appeal or other direct means of reviewing the proceeding is given."

Upon the return of the record of the inferior body to the court which issues the writ, the trial is had upon the record, it being improper to form any issue of fact or to hear or consider evidence relating to the original proceeding as heard on the trial. The superior tribunal, upon an inspection of the record alone, determines whether the inferior tribunal has exceeded its jurisdiction or has otherwise proceeded in violation of the law. The Supreme Court said:

"There is no presumption of jurisdiction in favor of a body exercising a limited or statutory jurisdiction. Nothing is taken by intendment in favor of such jurisdiction but the facts upon which the jurisdiction is founded must appear in the record * * * 'and the record must show that the board acted upon evidence and *contain the testimony upon which the decision was based, in order that the court may determine whether there was any evidence fairly tending to sustain the order.'* "

The finding there that the accused was guilty "as charged in the within and foregoing charges" was held to be a mere conclusion of law, stating no fact by

which the court was able to see that the conclusion was true.

The court also said, citing *Troxell v. Dick,* 216 Ill. 98, that a *quasi*-judicial tribunal of inferior jurisdiction must recite the facts, or preserve the facts themselves, upon which its jurisdiction depends. A recital, for instance, that due notice was given is not sufficient, such recital being a mere conclusion of law, but facts must be stated from which the court is able to see that the conclusion is true. The substance of the evidence should be given and not conclusions drawn therefrom. The court further said:

"The holdings of this court are that the return to a common law writ of certiorari must show by affirmative evidence the jurisdiction of the tribunal passing upon a case removing a person from office, and must show by the facts recited that the tribunal so acting had jurisdiction and authority so to do."

And further: "Such inferior tribunals do not possess unlimited and uncontrolled jurisdiction in the exercise of their powers and can not act arbitrarily in such exercise."

Subsequent decisions of the Supreme Court and many decisions of the Appellate Courts of this State follow *Funkhouser v. Coffin, supra,* and we think it may be said that little, if anything, since has been added to the law as announced in that decision.

An examination of the charges discloses that the petitioner, Murphy, was alleged to be guilty of violating provisions of rules 236 and 289 of the police department.

Rule 236 provides in substance that the right of members of the police department to entertain political opinions and the right of elective franchise are sacred and inviolate, but no members should be delegates to or members of any political or partisan convention, nor should they take part in any political campaign nor

make or solicit contributions to any political party, club or association, or for any political purpose.

The charges specified as to rule 236 were that petitioner suffered, permitted and directed police officers, patrolmen and sergeants under his command to take part in political campaigns by soliciting pledge cards, in putting up political banners and removing and causing to be removed political banners, pictures and portraits of other candidates in the district under his command. The specification further alleged that on March 3, 1927, in a confectionery and cigar store located at 753 North Clark Street, a representative of the Chicago Daily Tribune was counting the straw votes he had taken for the candidates for the office of Mayor of the city of Chicago; that Captain Murphy followed him in, and in the presence and hearing of several voters and persons standing in the store, Murphy said, ''There is nothing but G—— damned Thompson hoodlums in this place,'' or words of like and similar import; that he then and there threatened one of the customers therein to take him for a ride if he did not do something and get to work.

Another specification under this rule avers that Captain Murphy attended and participated in political meetings and activities as a partisan and supporter during the mayoralty campaign in the city of Chicago, prior to and including election day, April 5, 1927, thereby intending and attempting to influence, persuade and coerce in person and by reason of his official character as captain of police, the citizens and voters of and in his district.

Another specification alleges that Captain Murphy suffered and permitted houses of prostitution to be operated in his police district and suffered and permitted solicitation and roping for prostitution on the streets of his district, and suffered and permitted the operation of handbooks, gambling and the sale and dispens-

ing of intoxicating liquors in soft drink parlors in his district.

Specification 4 alleges the inability of Captain Murphy to prevent, and inefficiency in the prevention of, prostitution, the operation of places of prostitution, the solicitation and roping for prostitution on the streets of the district under his command, and further alleges his inability to prevent, and inefficiency in the prevention of, handbook making, gambling and the sale and dispensing of intoxicating liquors in the soft drink parlors in the district under his command.

The return recites that the civil service commission met at the city hall in the city of Chicago on August 11, 1927, for the purpose of investigating these charges and proceeded to hear and did hear testimony of the witnesses, a record of which is preserved and on file in the office of the commission, filed as a part of the return; that upon the conclusion of all the evidence and argument, the commission being fully advised, found that the charges as hereinbefore enumerated were filed against Captain Murphy in due form of law on July 5, 1927, and also the specifications as hereinbefore recited. It further shows that thereafter due notice was served upon Murphy by delivering a copy of the charges to him and informing him that these charges had been filed against him before the civil service commission by the superintendent of police under section 12 of the Civil Service Act, Cahill's St. ch. 24, ¶ 697, and that a hearing had been ordered to be had on these charges in room 612 of the city hall on July 11, 1927, at 10 o'clock a. m., at which time and place he might appear and be heard in his defense; that the cause was continued from time to time until August 11, 1927.

The return further shows that the charges were served more than five days prior to the investigation; that Captain Murphy appeared in person and was

represented by counsel; that he and his counsel were present throughout and participated in the examination of witnesses; that all the witnesses were duly sworn and testified; that on July 5, 1927, Murphy was a captain of the department of police of Chicago; that the commission had jurisdiction over the subject matter and of the person of Daniel D. Murphy, and from a consideration of all the evidence before them the commission found "the said Daniel D. Murphy guilty of the following: Violation of the following rules and regulations of the Department of Police of the City of Chicago, to wit." Thereafter is recited the four charges in substance as hereinbefore set forth, to gether with the specifications under the charges, and the return then further states:

"Wherefore the Civil Service Commission finds the said Daniel D. Murphy guilty of—

"Violation of rule 236 (Right to entertain Political Opinions);

"Conduct unbecoming a police officer or an employee of the police department;

"Neglect of duty;

"Incapacity and inefficiency in the service; as alleged in the foregoing charges and by reason of which finding of guilt, it is ordered that the said Daniel D. Murphy be and is hereby ordered discharged from the position of Captain, Department of Police, and from the service of the City of Chicago."

A certificate attached to the return is signed by all the commissioners and states "that the foregoing is a true, full and complete record of the proceedings."

The respondents contend that the evidence taken on the hearing, whether returned with the record or not, may not be considered as an essential part of the return and that the reviewing court may not lawfully determine from the transcript of the evidence whether the commission exceeded its jurisdiction or proceeded according to the law. It is contended it is only neces-

sary that the commission recite the facts upon which its jurisdiction depends and that it is only when these facts do not appear in the record that evidence of them sufficient to determine questions of jurisdiction of the inferior tribunal may be considered.

We do not accede to the supposed distinction made between the record and evidence. The civil service commission is not a common-law tribunal. It is not in any sense a court of record. Distinctions between bills of exception and common-law records may not be properly applied to its records. The record of the proceedings of the commission appears from the return made, and it may or may not include the evidence taken. It may, in lieu of the evidence, return such findings as will affirmatively establish its jurisdiction to make the order reviewed, but when, as here, the commission returns specific findings and also the evidence, the reviewing court may examine both, not for the purpose of weighing the evidence upon any material issue of fact, but in order to determine (1) whether the commission had jurisdiction; (2) whether it exceeded its jurisdiction; (3) whether there was any evidence tending to prove the charges made; and (4) whether the proceedings were conducted according to or in violation of the law.

We cannot agree to the contention of the commission that, having examined the evidence for the purpose of determining whether evidence was taken, we may not further consider the same for the purpose of determining other jurisdictional facts. We may suppose a case in which only evidence, wholly immaterial and wholly unrelated to any of the charges preferred, has been taken, or we may suppose a case in which evidence has been submitted tending to establish the charges made, while all competent and material evidence offered by the accused has been arbitrarily excluded. The provision of the statute requiring a discharge to be made only after a hearing, etc., would become a mere travesty

if a superior tribunal could not quash such a record. The purpose of the Civil Service Law, Cahill's St. ch. 24, ¶ 685 *et seq.,* would be entirely thwarted by such a proceeding. It was the design of the legislature in the enactment of this statute to provide a mode of trial which would assure to accused employees substantial justice, not according to the technicalities of the common law, but accordng to right and justice, irrespective of legal technicalities.

The petitioner says that the charges do not state a cause for removal, to which respondents reply that the commission determines what is cause for removal and, moreover, that the charges were based on rules of the department of which the petitioner had knowledge.

While it is true that it is for the commission to decide what is cause for removal, it may not make an arbitrary and unreasonable rule in this respect. In *Andrews v. King,* 77 Me. 224, a statute provided that an employee might not be removed except for cause. The court held cause to mean some substantial shortcoming which renders continuance in his office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and a sound public opinion recognize as a good cause for his not longer occupying the place. This statement of the rule seems to be in harmony with the authorities. Throop on Public Officers; *City of Chicago v. Condell,* 124 Ill. App. 64, reversed on a different point in *City of Chicago v. Condell,* 224 Ill. 595; *Heaney v. City of Chicago,* 117 Ill. App. 405; *Joyce v. City of Chicago,* 120 Ill. App. 398, 403, affirmed in 216 Ill. 466; *City of Chicago v. Gillen,* 124 Ill. App. 210; *Ramsay v. Shelton,* 329 Ill. 432; *State ex rel. Gill v. Common Council of Watertown,* 9 Wis. 229.

Here these charges were not formulated with the precision that might be required in a common-law pleading or an indictment, but they were, we think, sufficient to apprise the petitioner of the nature of the

matters alleged against him. As we will hereafter point out, the allegation as to one charge did not state a cause sufficient to justify removal, but as to the others, while informal, the same were in substance sufficient.

The return fails to affirmatively show that all witnesses for defendants were heard, and it is argued that the proceeding was contrary to law in that material evidence offered in petitioner's behalf was excluded. However, we think the facts which petitioner sought to establish by these witnesses were proved by others and are uncontradicted in the record, and we therefore conclude that this particular ruling of the commission, while technically contrary to law, cannot be said to have resulted in substantial injustice.

The controlling question in the case is whether there is any evidence in the return from which the commission could reasonably find that Captain Murphy was guilty of conduct which would justify the commission in the finding and order for his discharge. As to the first specification, one Levantis testified that during the mayoralty campaign Captain Murphy entered a cigar store at 753 North Clark Street where a representative of the Chicago Tribune was conducting a poll, and there made the statement, "There is nothing but G— damned Thompson hoodlums in this place," and that Captain Murphy said to him that he was "a hell of a business man" and his place was nothing but a "G— damned Thompson joint." He says that a customer named Dunsworth was there and that "Captain Murphy called Dunsworth a Thompson hoodlum and said he would take him for a ride." This witness also testified that he asked Captain Murphy for a permit to play cards, but the Captain said, "I can do nothing for you."

Dunsworth, who was secretary of the America First William Hale Thompson Club, testified that while Captain Murphy was in the cigar store at this time he

made no such remarks, and on cross-examination stated, ''I was for Thompson then and I am still for Thompson, but I don't believe in dragging a man down with a bunch of lies.''

If we were permitted to weigh the evidence, it would not be difficult to decide that these allegations were not proved; but with that we have nothing to do, as it is not for the reviewing court in this proceeding to weigh the evidence. However, if it is conceded that these remarks were made, we do not think the commission could reasonably find therefrom that Captain Murphy violated rule 236, which in substance provides that members of the police department shall not be delegates to or members of any political or partisan convention, or take part in any political campaign, or make or solicit contributions to any political party, club or association, or for any political purpose.

As to other alleged violations of this rule, there was evidence in the record tending to show that while the campaign was in progress certain police officers serving in the district took part in the political campaign by putting up pictures of one of the candidates and causing pictures and portraits of the other candidate to be removed and in other ways. This testimony was objected to when offered on the ground that there was no proof that Captain Murphy had knowledge of this conduct of these officials. The attorney prosecuting the charges thereupon promised that this connection would thereafter be shown. This was not done, so that as a matter of fact there is no evidence in the record from which the commission could reasonably find that this conduct on the part of these officers was with the consent, approval or connivance of Captain Murphy.

As to the specification that Captain Murphy attended and participated in political meetings and activities as a partisan and supporter during the mayoralty campaign, thereby intending and attempt-

ing to influence, persuade and coerce in person and by reason of his official character the citizens and voters of his district, the evidence of one Pappas was given. He said that he was at a meeting in the North Side Turner Hall March 29, 1927, and that there was another meeting—a Democratic meeting—in the hall. He says that he saw Captain Murphy standing at the door and that "they" broke up the meeting he went to, which was a meeting of the Greek-American Republican Club; that the Greek-American Club was supposed to have the hall on the second floor; that he went up there and saw Captain Murphy standing at the door, and he, Pappas, turned around and went away; that Captain Murphy was in uniform; that there were other police officers standing at the door and telling the people to go inside; that the meeting inside was a Democratic meeting; that there was a big crowd there and Captain Murphy was there making them move along; that Captain Murphy did nothing else and he did not talk to the witness.

Captain Murphy testified with reference to this incident that he was present at the meeting doing police duty; that there was an awful crowd in the North Side Turner Hall on that occasion; that when the large hall upstairs was filled there was a smaller hall downstairs and later he had to stop people going in there; that the halls were not large; that he had to call for extra men and station them on the fire escapes; that he found some of the fire escapes closed and caused them to be opened; that he attended the John Dill Robertson meeting and the Thompson meeting in North Side Turner Hall and the Thompson meeting in the Medinah Temple; that he had difficulty getting in and had to practically force his way into the building and stayed there until the meeting was over. He says he went to political meetings at the Furniture Mart and other places in the district; that he did not participate in the Dever meeting in the North Side

Turner Hall; that it was in his police district and it was his duty to be there; that he sometimes wore a uniform at these meetings and sometimes did not. Counsel for the commission in argument cite purported testimony of Pappas and one Davis which it is urged tend to sustain these charges, but the record fails to disclose the supposed evidence.

The evidence being as recited, we think it must be held that there is no evidence from which the commission could reasonably find Captain Murphy guilty of this charge.

As to the further charges that Captain Murphy suffered and permitted houses of prostitution to be operated in his police district, permitted solicitation and roping for prostitution on the streets in the district, and permitted the operation of handbooks and gambling and the sale and dispensing of intoxicating liquors in soft drink parlors in the district, and that he was unable to prevent, and inefficient in the prevention of, prostitution, the operation of places of prostitution, the solicitation and roping for prostitution on the streets in his district; that he was unable to prevent, and inefficient in the prevention of, handbook making, gambling and the sale and dispensing of intoxicating liquors in soft drink parlors in his district, the evidence shows without dispute that the boundaries of the East Chicago Avenue police district are the river on the south, Division Street on the north, the north branch of the Chicago River on the west and the lake on the east, and that it is a very populous district.

The evidence against the petitioner as to conditions in his district was given by Charles E. Egan, a lieutenant of police, who said that he made an investigation on vice conditions (upon what date is not stated) and that he found open prostitution with solicitation on the streets and made some raids on Grand Avenue,

North Clark Street, Chicago Avenue and State Street; that on enumerated dates on West Grand Avenue, West Ohio Street, North Clark Street, North State Street, Rush Street, West Erie Street and North Dearborn Street he found various houses of prostitution and gambling and made arrests. He said he had been on the police force for 13 years but never had been assigned to the Chicago Avenue station and knew nothing of the Chicago Avenue district or its reputation; that this was the first time he had been assigned to vice. He said that all the police could do was to get out, keep out and be vigilant and whenever persons were seen plying their illegal operations to arrest and bring them in; that he did not know of anything else that could be done. There is no evidence that the persons arrested were convicted and evidence as to the disposition of the cases was excluded.

The evidence shows without contradiction that during the term of Captain Murphy at the East Chicago Avenue station he made about 1,290 raids on vice, gambling and liquor and that in these raids from one man and one woman to seventy-five men and women were arrested. He testified in detail to the character of the population of this district, showing that the district when he took charge was largely given over to vice and crime; that it was a rooming-house district where it was exceedingly difficult to get evidence; that the force under his command was insufficient to properly patrol this district so as to entirely wipe out the prevalent vice and crime. As to most of the places described in Lieutenant Egan's testimony, the record shows that while Captain Murphy was in charge of this district arrests were repeatedly made at these places; that at times when making raids Captain Murphy had been restrained by injunctions of the court, for instance, as to a place at 500 North Clark Street an injunction had been issued before Captain Murphy was

assigned to the district, and in spite of it he caused this place to be raided on several occasions; that in the first raids he found nothing; that there were hidden openings in the walls leading into the basement and intricate hiding places; that he had broken down doors and frequently spent more than two hours searching without avail; that as to 538 North Clark Street, he was before Judge Sullivan three times on a contempt charge; that it was an organized house; that he told them to keep the girls away from there; that he continued to go in and search the place; and that when he was held a second time on a contempt charge he finally quit.

In view of this uncontradicted evidence and of the character of this district, as established by the evidence, we think it cannot be said on this record that there is evidence tending to show that Captain Murphy was inefficient or that he tolerated or condoned in any way the vice and crime which was rampant in the district, but on the contrary that he was vigilant and efficient, earnestly endeavoring, in so far as his limited force would permit, to keep the district clean and enforce the law. There is no evidence in the record from which the commission could reasonably or justly find that Captain Murphy at any time, either with knowledge or by reason of negligence, failed to maintain and enforce the law in this district to the best of his ability with the forces which he had at his command.

To permit a record like this to stand would amount to a nullification of section 12 of the Civil Service Law, Cahill's St. ch. 24, ¶ 697. There is not a scintilla of evidence tending to show any dereliction on the part of Captain Murphy, but on the contrary there is evidence tending to show a diligent, earnest, effective attempt in good faith to perform his duty. It follows that the record of the civil service commission should have been quashed. The order of the circuit court quashing the

writ will therefore be reversed and the cause remanded with directions to enter an order in accordance with the views expressed in this opinion.

*Reversed and remanded with directions.*

O'CONNOR, P. J., and McSURELY, J., concur.