88 Ill. App.2d 172 (1967)
232 N.E.2d 256
Carmen Senese, Plaintiff-Appellee,
v.
Civil Service Commission of the City of Chicago, and Milton Pikarsky, Commissioner of Public Works of the City of Chicago, Defendants-Appellants.
Gen. No. 50,831.
Illinois Appellate Court  First District, Fourth Division.
October 2, 1967.
Rehearing denied October 30, 1967.
Raymond F. Simon, Corporation Counsel, of Chicago (Sydney R. Drebin, Assistant Corporation Counsel, and *173 Harry H. Pollack, Special Assistant Corporation Counsel, of counsel), for appellants.
Michael F. Ryan, of Chicago (Richard F. McPartlin, of counsel), for appellee.
MR. JUSTICE DRUCKER delivered the opinion of the court.
Defendants appeal from a judgment reversing a finding and decision of the Civil Service Commission of Chicago that plaintiff be removed from his position as a tree trimmer in the Bureau of Forestry of the Department of Public Works of the City of Chicago.
On July 31, 1964, charges were filed against the plaintiff that from the fall of 1960 to July 1, 1964, plaintiff, while an employee of the Bureau as a civil service tree trimmer, was a partner in the firm of Hillside Florist; that Hillside Florist, during said period of time, conducted a florist business for profit, including flower sales to the City, which sales were made through the Bureau.
Thomas S. McInerney, a commissioner of the City's Department of Investigation, testified that on July 6, 1964, he questioned plaintiff, and that plaintiff gave him the following information: That he (Senese) organized Hillside Florist; that he was one of the persons who applied for the original florist license with his wife and sister Rose. Although his position was tree trimmer, he had performed as an inspector and as such he answered complaints and made inspections after storms. He also participated in special events involving visiting dignitaries where flowers were bought for the occasion by the City; that he was not in full control of selecting and buying said flowers but participated therein; that after a decision was made therein, he would place the order for said flowers with Hillside Florist; and that such procedure had been going on since about 1961. He also helped with the arrangement of flowers and sometimes, *174 because the arrangement did not look good or flowers looked damaged, he would get more flowers.
A statement of plaintiff was introduced into evidence as Exhibit 1. It contained in pertinent part the following additional information: That when he helped in deciding what flowers would be needed for various City functions, after he and the other two men in the Bureau of Forestry who helped in such decision made their decision, the three of them would go to a wholesaler and select the flowers; that they always selected 1A flowers; that the flowers they ordered were delivered to Hillside Florist at 6841 South Ashland; that Hillside would arrange the flowers, furnish the necessary equipment, and deliver the flowers in its truck to the function in question; that Senese organized Hillside Florist about 1948 with his sister Rose and Anthony Calzaretta; that when he went to work for the City in 1952 he quit active operation and management of Hillside Florist; that since said time he and his wife have shared one-third in Hillside's profits; that his wife draws $110 a week from Hillside; that for 1963 his income tax return shows that he and his wife earned a profit of $8,902.18 from Hillside Florist.
On cross-examination, Commissioner McInerney stated that "Senese, solely, bought the flowers although he did not have full power to select them," and that the City's purchases from Hillside Florist were not on competitive bidding.
Plaintiff's direct testimony generally followed the written statement. On cross-examination he stated that in 1955 he made application to the City Collector for a license as a retail florist, and that a license was issued in his name and that of his sister Rose. He further testified that the City always purchased the special flowers from Hillside Florist; that such business amounted to $20,000 over a period of four or five years; that he went to the wholesalers to pick out the flowers and directed the wholesaler *175 to send the flowers to Hillside Florist; that he derived an income from Hillside Florist; and that there was always a yearly profit from Hillside.
[1] The Cities Civil Service Act became effective in the City on July 1, 1895. People v. Kipley, 171 Ill. 44, 47, 49 NE 229. Then, and now under section 10-1-18, Illinois Municipal Code (Ill Rev Stats 1965, c 24, § 10-1-18), the Commission has had the power to remove a civil service employee for "cause." Since said act has never defined "cause," the Commission has always had the jurisdiction to determine "cause." Kammann v. City of Chicago, 222 Ill. 63, 65, 78 NE 16.
[2] Cause justifying the removal of a civil service employee means "some substantial shortcoming which renders continuance in his office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and a sound public opinion recognize as a good cause for his no longer occupying the place." Murphy v. Houston, 250 Ill. App. 385, 394.
Defendants argue that public policy dictates that when an employee of the City acts as an agent of the City in dealing with a company in which he has a financial interest, a conflict of interest arises, and that such conflict of interest is detrimental to discipline and efficiency, citing Murphy v. Houston, 250 Ill. App. 385, 394.
In discussing the meaning of "public policy," the Supreme Court of Florida, in City of Leesburg v. Ware, 113 Fla 760, 153 So 87, 89, stated:
A correct definition, at once concise and comprehensive, of the words "public policy," has not yet been formulated by our courts. Indeed, the term is as difficult to define with accuracy as the word "fraud" or the term "public welfare." In substance, it may be said to be the community common sense and common conscience, extended and applied throughout *176 the state to matters of public morals, public health, public safety, public welfare, and the like. It is that general and well-settled public opinion relating to man's plain, palpable duty to his fellow men, having due regard to all the circumstances of each particular relation and situation.
In the same case, the court also stated at page 90:
It may be safely stated, as a sound or accurate standard by which to determine the applicability of the rule, that no phase of private relations shall be contrary to public policy; that when a contract contravenes an established interest of society it is void as against public policy, and for one person to undertake to be the agent for two persons trading at arm's length with one another contravenes an established interest of society.
This language was cited in the recent case of City of Coral Gables v. Weksler (Fla), 164 So.2d 260, 262 (1964), in which a city employee also had a lease with the City and the question of conflict of interest arose. The court stated at page 263:
The conflict of interest theory is based, as we understand it, on the fact that an individual occupying a public position uses the trust imposed in him and the position he occupies to further his own personal gain.
In the instant case, the city employee's related duties as a tree trimmer included the selection of flowers for special occasions. He stated that he "went to the wholesalers to pick out the flowers and directed the wholesaler to send the flowers to Hillside Florist" (in which he had a financial interest). There is evidence that plaintiff *177 "solely" placed the orders. He therefore acted in a dual capacity  purchasing on behalf of the City and selling to the City at a profit for himself.
[3, 4] The Civil Service Commission ordered plaintiff removed from his position for cause. "On administrative review the court does not weigh the evidence and its function is limited to ascertaining if the findings and decision of the administrative agency are against the manifest weight of the evidence." DeGrazio v. Civil Service Commission of Chicago, 31 Ill.2d 482, 489, 202 NE2d 522. The order of the Commission was not against the weight of the evidence, and the court erred in setting it aside.
Plaintiff also claims that his motion to quash the charges was never ruled on by the Commission. In his complaint, however, he states that "plaintiff filed a motion with [the] Commission to quash charges, which motion was denied." Nevertheless, we find that the charges were sufficient to apprise him of the nature of the matters alleged against him. Murphy v. Houston, 250 Ill. App. 385.
The judgment of the Circuit Court is reversed and the findings and decision of the Civil Service Commission are affirmed.
Reversed.
ENGLISH, P.J. and McCORMICK, J., concur.