## City of Chicago v. Millar J. Condell.

### Gen. No. 12,177.

1. CERTIORARI—*lies to review proceedings of Civil Service Commission.* Certiorari lies to review the proceedings of the Civil Service Commission. Citing, Chicago v. Bullis, *ante* p. 7.

2. CERTIORARI—*how judgment of Civil Service Commission reviewed upon.* A judgment of the Civil Service Commission upon *certiorari* is reviewed from the record of that body as returned pursuant to the writ; if the record as returned is incomplete, the court issuing the writ has the power to compel such record to be made complete.

City of Chicago v. Condell.

3. CERTIORARI—*how failure to give notice of application for, should be raised.* A failure to give notice of an application for a writ of *certiorari* should be raised by motion to quash the writ.

4. CERTIORARI—*issuance of writ of, discretionary.* The issuance of a writ of *certiorari* rests within the sound discretion of the court and the court may require that its issuance be shown to be necessary to prevent substantial injury to the applicant and that its object would not, if accomplished, be productive of great inconvenience or injustice, and often the issuance of the writ is properly denied where the power to issue is unquestionable and where it is apparent error has intervened in the proceedings sought to be reviewed.

5. CERTIORARI—*when defense of laches should be raised.* In a proceeding by *certiorari* the defense of laches should be interposed before answer, unless the period of delay is equivalent to the time limited for the suing out of a writ of error.

6. CIVIL SERVICE COMMISSION—*is judicial body.* The Civil Service Commission is not simply an executive branch of the municipal administration but is a judicial or *quasi*-judicial body.

7. CIVIL SERVICE COMMISSION—*"cause" for dismissal by, subject to review in the courts.* The "cause" upon which the Civil Service Commission predicates a dismissal will be considered and reviewed by the courts, and if such cause be found not a legal ground for dismissal the order of dismissal may be annulled.

8. CIVIL SERVICE COMMISSION—*how jurisdiction to discharge must appear.* The jurisdiction of the Civil Service Commission to discharge must affirmatively appear from the record of its proceedings.

9. CIVIL SERVICE COMMISSION—*when jurisdiction to discharge does not appear.* Jurisdiction to discharge does not appear where no notice of trial or waiver of such notice are shown in the record of the proceedings of the Civil Service Commission and it does not appear from such record that the accused was present at the trial.

10. PATROLMAN—*what not ground for dismissal of.* Failure of a patrolman, within a reasonable time, to pay a mere civil debt, notwithstanding it has been reduced to judgment, is not a legal ground for his dismissal by the Civil Service Commission; dishonesty, fraud, or the like, must appear.

11. JUDICIAL PROCEEDINGS—*presumptions indulged in favor of.* All intendments and presumptions will be indulged in aid of the record and proceedings of a court of record.

*Certiorari* proceeding. Appeal from the Superior Court of Cook County; the Hon. WILLARD M. McEWEN, Judge, presiding. Heard in this court at the March term, 1905. Affirmed. Opinion filed December 14, 1905.

JOHN W. BECKWITH, for appellant; EDGAR BRONSON TOLMAN, Corporation Counsel, of counsel.

A. D. GASH and JAMES H. HOOPER, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

The appellant, the city of Chicago, in this appeal seeks a reversal of a judgment of the Superior Court of Cook County rendered by that court on the return made by the Civil Service Commissioners of the city of Chicago to a writ of *certiorari* previously issued by said court to the city of Chicago, the Civil Service Commissioners and their secretary.

The petition for said writ was filed by the appellee, Millar J. Condell, May 27, 1904. It set out that the petitioner had been for ten years a member of the police department of the city of Chicago, and that he was during that time a patrolman with a salary of $1,100 per annum; that when said position of patrolman was classified by the Civil Service Commission, he duly passed the required examination and was appointed and certified to said position; that August 6, 1902, the superintendent of police of the city of Chicago, in behalf of the city, charged the petitioner with violation of rule 69 of the Rules and Regulations of the Department of Police by "neglect to pay within a reasonable time a just indebtedness," and that December 2, 1902, the Police Trial Board found the petitioner guilty as charged and decided that he should be removed from the police department and from the service of the city of Chicago, by the superintendent; that the Civil Service Commission approved the findings of the Police Trial Board, and thereupon the superintendent of police issued an order and notified the petitioner that he had been permanently removed from the service of the city of Chicago; that the charges did not state facts sufficient in law to constitute an offense of any kind under the laws of this State; that there was no provision made by any of the rules of the Civil Service Commission, or by any of the rules governing the police department,

City of Chicago v. Condell.

which provide that the commission of any such offense as is charged in said charges shall work a discharge of a patrolman; that the Civil Service Commission had no jurisdiction to hear said charge, and that the order removing petitioner from his position was entered without jurisdiction and was void; that petitioner was guilty of no infraction of any rules of the Civil Service Commission, or of the police department, or of the Civil Service Act; that the petitioner immediately after said supposed removal had consulted with lawyers and been advised that he had no remedy and could not have the findings of the Commission reviewed; that on the day of the filing of the petition he had first learned that said pretended rule 69 was not a rule of the Civil Service Commission, but had been made by a superintendent of police more than five years before the Civil Service Act went into effect, and had never been re-adopted by the police department or the Civil Service Commission, and that the superintendent of police at the time he made the rule had no authority to make such a rule or any rule which provided as a penalty a discharge from the police force.

The petition prayed the court to allow a writ of *certiorari* to be issued to the Civil Service Commissioners and their secretary, directing them to certify the record of their proceedings, together with the charges, to the Superior Court of Cook County for review.

On this petition apparently, a writ of summons was issued to the city of Chicago to answer unto Millar J. Condell "in a writ of *certiorari* taken on a certain judgment rendered before the Civil Service Commissioners of Chicago," which summons was made returnable to the "First Monday of June next," but which was served on the day of its date and of the date of the petition, namely, May 27, 1904. On the same day, May 27, 1904, the writ of *certiorari* was granted, running as before described. This writ of *certiorari* was served on the Civil Service Commissioners on May 31, 1904, and on June 17th the said Commissioners filed their return to it. We mention these dates thus particularly because they are of significance in relation to that which we shall

have to say in this opinion on the position of counsel for the appellant that the laches of appellee in filing his petition should be made a ground of reversal herein, and in relation to the assignment of error made but not argued by appellant, that the Superior Court erred in granting the writ of *certiorari* without notice to the defendant.

The return of the Civil Service Commissioners recites that on August 4, 1902, the following charges were preferred against Millar J. Condell by Francis O'Neill, Superintendent of Police:

"To the Civil Service Commission of the City of Chicago:

I hereby request that the following charges against Millar J. Condell, rank, patrolman of the forty-first precinct, be investigated by the commission or by a board or officer appointed by the commission, and proper action be taken under the provisions of Section 12 of the Civil Service Act, and the rules adopted in pursuance thereof.

### CHARGES.

(Violation of Rule 69.) Neglect to pay within a reasonable time a just indebtedness in violation of the book of Rules and Regulations governing the Police Department.

### SPECIFICATIONS.

That Millar J. Condell signed notes for a $3,000 policy in the New York Life Insurance Company, making a verbal agreement with Julius Falck, an agent of the New York Life Insurance Company, to have said policy changed to $1,000, which he afterwards refused to do. On the refusal of the New York Life Insurance Company to change the policy Millar J. Condell returned the policy to their office, and refused to have any more dealings with them.

| FOR COMPLAINT. | FOR DEFENSE. | |
| --- | --- | --- |
| WITNESSES. | | |
| Name. | Name. | Address. |
| | Millar J. Condell, 1107 Lincoln Ave. | |
| Julius Falck, 1752 York Pl. | | |

Respectfully submitted.

(Signed) FRANCIS O'NEILL,
General Superintendent of Police."

Appearing in the return also as a part of the specifications and charges, or attached thereto, was the certified transcript of a judgment given by J. K. Prindiville, a justice of the peace, in a suit entitled Julius Falck v. Millar J. Condell, which came from Justice Underwood to Justice Prindiville April 28, 1902, on a change of venue, and after various continuances was called on May 3, 1902, the defendant not being present. Plaintiff's claim is recited by the transcript to have been on a promissory note which, with the testimony of the plaintiff, was introduced in evidence. Whereupon, the justice gave judgment against the defendant for $108.93 and costs. There also is shown on the charges and specifications an endorsement—"Served copy of within charges on the within named Millar J. Condell this 5th day of August, 1902. James F. Walsh, Patrol Sergeant Forty-first Precinct."

The return then recites that December 2, 1902, the following findings and decision were rendered by the Trial Board in the case of Millar J. Condell:

"Upon investigation of within charges we find said Millar J. Condell guilty, and decide that he be removed from the Police Department and from the service of the City of Chicago by the General Superintendent of Police.

(Signed)   John D. Shea,<br>Joseph Powell,<br>Christian Meier."

There follows in the return:

"Extract from minutes of the Civil Service Commission of December 3, 1902. Present, Commissioners Ela, Powell and Meier. The Police Trial Board reported the following findings, which were approved: 'Millar J. Condell, Patrolman, Forty-first Precinct. The Police Trial Board finds said Millar J. Condell guilty as charged, and decides that he be removed from the Police Department and from the service of the city by the General Superintendent of Police.' "

Extract from Minutes of the Civil Service Commission of October 28, 1901:

"Second. Resolved, That this Commission hereby establishes and appoints a board to consist of two members of this Commission and an Inspector of Police, and to be known as the 'Police Trial Board,' to investigate the charges against officers in the Department of Police, and make the findings and decisions upon such charges, under the provisions of Section 12 of the Civil Service Act; provided, however, that this Commission may, when it so elects, investigate and make the findings and decisions in any cases of such charges without the same being submitted to said Trial Board, and the Commission reserves the right so to do, and to change the personnel of said board or abolish the same, in the discretion of the Commission, and to fill temporary vacancies.     *     *     *

Fifth. Resolved, That this Commission hereby designate and appoint Commissioners John W. Ela and Joseph Powell and Inspector of Police John D. Shea as the members of said Police Trial Board until further orders of the Commission."

Extract from Minutes of the Civil Service Commission of January 13, 1902. Present, Commissioners Lindblom, Ela and Powell: "It was ordered that the Police Trial Board, until further notice, shall consist of Commissioners John W. Ela and Joseph Powell and Inspector John D. Shea."

Extract from Minutes of the Civil Service Commission of July 30, 1902. Present Commissioners Ela and Powell: "It was ordered that Commissioner Meier take the place of Commissioner Ela on the Police Trial Board, until further orders, as Commissioner Ela will be absent for a short time."

The return concludes with a certificate of the secretary of the Civil Service Commission that it is a true, perfect and complete record of the proceedings of the Civil Service Commission of the city of Chicago in and by the discharge and removal of Millar J. Condell from the position of patrolman of the 41st precinct police department of the city of

Chicago, and that it comprises all the proceedings, records, papers and files in that matter.

November 19, 1904, the Superior Court entered a judgment order, reciting that the cause on that date came on "to be heard on final hearing on petition of plaintiff and return of respondents, and the court being fully advised in the premises found that the proceedings of the Civil Service Commissioners set out in the petition and return be quashed," and ordering "that the proceedings of the Police Trial Board of December 2, 1902, and of the Civil Service Commissioners of December 3, 1902, in and about the discharge of Millar J. Condell from the police force of the city of Chicago be quashed and held for naught."

A bill of exceptions in the record shows that the cause first came on for trial before a judge of the Superior Court without a jury, "upon the petition" and "upon the return" on June 30, 1904, and that the respondents then moved the court "to find the issues for the respondents"; that this motion was overruled by the court; that thereafter on November 19, 1904, the court "found the issues in said cause for the petitioner," and found "that the Civil Service Commission, without legal right or lawful authority," removed the petitioner from the service of the city of Chicago, and "quashed, superseded and declared null and void, the record of the proceedings of the Civil Service Commission in so removing him."

The first contention of the counsel for the city of Chicago in this appeal is that the common law writ of *certiorari* does not lie from the Superior Court of Cook county to the Civil Service Commissioners of Chicago, inasmuch as removal from office by the Civil Service Commission is the exercise of a ministerial or executive power, and not one of a judicial or *quasi* judicial nature.

This proposition has been thoroughly discussed in the opinion filed this day in The City of Chicago v. Walter Bullis, *ante,* p. 7, and we deem it unnecessary to add herein anything to what is there said. We have no doubt of the jurisdiction of the Superior Court to review on *certiorari* the

proceedings of the Civil Service Commission. As was said, however, by this Court in Joyce v. The City of Chicago, 120 App. 398, since affirmed by the Supreme Court, the only questions open in the reviewing court are, "Did the Civil Service Commission have jurisdiction in the case?" and, Did it follow the form of proceedings legally applicable in such cases? These questions it must determine from an inspection of the return of the Commission, which imports absolute verity, and is taken as conclusive. If the return is not complete, there are methods of compelling its completion which the court issuing the writ will adopt on proper motion of the party aggrieved. If it is false, the remedy is by action for the false return. But within the limits indicated, the authority of the Circuit and Superior Courts of Cook County to issue the writ to the Civil Service Commission and to decide the matters involved on the inspection of the return made, is by us undoubted. It has been recognized, as is pointed out in the opinion of the City of Chicago v. Bullis, many times in this court and in the Supreme Court.

The case at bar, in the view we take of "the charges and specifications" therein as justifying the judgment of the Civil Service Commission, we deem a forcible illustration of the fact that the purpose of the city Civil Service Act would be very badly served by holding that the Commission was not a judicial or *quasi* judicial body, but simply an executive branch of the municipal administration, subject in its removals and to the causes for them to no reviewing power whatever.

A police officer before the Civil Service law was enacted was subject to arbitrary discharge by the Mayor, but such removal had to be reported to the Council. To prevent removal for political reasons, the Civil Service Act provided that no person could be removed "except for cause on written charges and after an opportunity to be heard in his own defense." If the Civil Service Commissioners, appointees of the Mayor, are the ultimate judges of whether a cause assigned in a charge made against an officer warrants his dis-

City of Chicago v. Condell.

charge if proven, it is obvious that the tenure of his office, however faithful he may be, is no more secure, perhaps not so secure, under the present system as under the former one; for in that the Mayor was obliged to take the responsibility personally upon himself and report his action to the City Council. The language of the Civil Service Act above quoted "implies of course," we said both in Joyce v. The City and in Heaney v. The City, 117 App. 405, "that the written charges must state 'a cause' for removal, and that this cause must be some substantial shortcoming which renders continuance in his office or employment of the accused in some way detrimental to the discipline or efficiency of the service,"—something, as the Supreme Court of New York expressed it in construing a similar provision, "which the law and a sound public opinion will recognize as a good cause for his no longer occupying the place."

We think that wide as is the latitude that should, when this is conceded, be given to the commission in their judgment of what will justify a separation from the service, the charges and specifications in the case at bar set forth no cause for removal, and gave no jurisdiction to the Civil Service Commission to try the petitioner.

The charges and the specifications under them should certainly be considered together in determining their nature. So considered they show, although in rather vague and obscure terms, that on a claim arising from a business dispute, in which, from the statement of it in the specifications, one might indeed suppose the petitioner had the juster side of it, there was a judgment rendered against him by a justice of the peace, the said judgment being rendered in his absence after several continuances. Whether his absence was neglectful or involuntary because of his duties, does not appear. Even if the specifications and their attachment, which indicate the nature of the unpaid indebtedness and thus limit and define the charge, should be altogether disregarded, as we do not think they should be, the case is not materially improved for appellee. "Violation of rule 69" means nothing in the absence of the rule from the return,

and "neglect to pay within a reasonable time a just indebtedness" does not exclude a perfectly honest inability to do so, resulting from unforeseen accident. That to be a dishonest debtor, a confidence man, or, in common parlance, "a dead beat," one, in the language of counsel for the city, "who culpably fails to discharge a just debt after a reasonable opportunity" and with ability to do so,—is a sufficient cause for separation from the city's service, may be conceded without any effect upon the position taken here, that the cause set forth in the case at bar was no cause at all.

If the Civil Service Commission had power to remove petitioner for this reason, they would have the equal power to do so because he voted the Republican or Democratic ticket, or attended the Methodist or the Catholic church.

Beyond this reason for holding the return insufficient to justify the action of the Commission there is another, which may be strongly urged. Jurisdiction must appear on the face of the return. It is on the return alone (not even also on the petition, as the record of the court below has recited in the case at bar) that the matter involved, in the *certiorari* must be determined and the judgment rendered by the reviewing court. Highway Commissioners v. Smith, 217 Ill., 251; Lindblom v. Doherty, 102 Ill. App., 14–24; City v. Bullis, *ante,* p. 7.

There is nothing in the return which shows that any notice of the time and place of his trial before the trial board was given petitioner, although the statute absolutely requires that he should have an opportunity to be heard in his own defense. Nothing in the return shows that the petitioner was present at the trial or in any way waived such notice. Counsel for appellant contend that the requirement of the statute is proven filled by the endorsement signed by Walsh on the charges incorporated in the return,—"Served copy of within charges on the within named Millar J. Condell this 5th day of August, 1902." Assuming that this sufficiently proves service of a copy of the charges on the accused, can it be fairly said that "opportunity to be heard in his own defense" means no more than that a man should be informed

City of Chicago v. Condell.

that a person has made charges against him? There is not in the return in this case shown a rule of the Civil Service Commission, requiring notice in writing to the accused stating the time and place when and where the charges will be investigated, as there was in the return in the City v. Bullis. If there were, this case would fall exactly within the rule stated in that case, that the objection that the return did not show said notice is fatal. But we think that without that rule it is plain that the statute required more notice than is shown in this return, and that the defect is jurisdictional.

There remains to be noticed only the contention made by appellant, that the laches of the appellee shown on the face of his petition rendered unjustifiable the relief it granted to him. To sustain this contention counsel lay stress on the language of the opinion of this court in the case of Heaney v. the City of Chicago. Although it was expressly also said in that opinion that it was not there necessary to decide the question alluded to in that language, there is no occasion for us to retract or modify it. It was not used with reference to any particular state of the pleadings. Now that the question is fairly raised and before us, however, it becomes proper and necessary for us to say that this defense of laches short of the time limited for a writ of error, to be effective must come before a hearing on the issues raised by an inspection of the return. In the analogous case of a petition for a *mandamus,* the Supreme Court says it should be raised before answer and by a demurrer to the petition. City v. People *ex rel.* Gray, 210 Ill., 84. In the case of a petition for a common law writ of *certiorari,* it should be raised in some form by objection to the issuance of the writ, or at the latest, by a motion to quash the writ after it is issued and before a decision by an inspection of the return. No such objection or motion to quash is shown by this record. The judgment of the court in this case is shown by the bill of exceptions to be based on a motion of appellant "to find the issues" for the respondent and on the issues shown by an inspection of the return.

If it be suggested that the issuance of a summons on the petition returnable to the June term of the Superior Court and the issuance of the writ of *certiorari* on the day the petition was filed, before the June term began, indicates that the writ of *certiorari* was issued without notice to the appellant as alleged in the first assignment of error, one answer is that unlike the case of a record from a subordinate tribunal of limited statutory jurisdiction such as the Civil Service Commission, intendments are made in favor of a record from a court of general jurisdiction like the Superior Court that the proceedings were regular, where the contrary does not appear, and that it does not necessarily follow from the dates mentioned that the appellant did not receive notice of the intended application for the writ of May 27, 1904.

But even if, in accordance with a practice of which we do not approve, such notice was not required by the court and was omitted, there still remained the opportunity for the appellant before the return was made to move to quash the writ as improvidently granted.

As the Court of Appeals of New York has said: "The issuing of the writ rests in the discretion of the court, and consequently it can, in its discretion, recall or quash the writ without passing on the validity of the proceedings sought to be reviewed." People v. Commissioners, 103 New York, 370; People v. Stillwell, 19 N. Y., 370.

The granting of a *certiorari* is in the discretion of the court, and it is often properly denied where the power to issue it is unquestionable and where there is apparent error in the proceedings below. Before allowing the writ the court may require that it should be shown to be necessary to prevent substantial injury to the applicant, and that its object would not, if accomplished, be productive of great inconvenience or injustice. If this rule is followed, as it should be, and notice to the appellant is required before the writ is issued, embarrassing results to the Civil Service Commission of the power of the courts to issue to it such a writ cannot occur. It is not to be presumed that the courts will use their power "to destroy the authority, prestige or dis-

ciplinary power" of the Commission, or "subvert the principles of the Civil Service Act." The judgment of the Superior Court is affirmed.

*Affirmed.*