Walter G. Nolting, Appellee, v. Civil Service Commission of City of Chicago, Stephen E. Hurley, President, and Albert W. Williams, Member of Civil Service Commission of City of Chicago, Appellants.

**Gen. No. 46,545.**

First District, Second Division.

September 20, 1955.

Released for publication October 25, 1955.

PER CURIAM.

Plaintiff, a patrolman in the Department of Police, brought this suit under the Administrative Review Act to review an order of the Civil Service Commission of the City of Chicago which had found him guilty of misconduct and ordered him discharged from his position. The trial court found that the Commission's decision was harsh and unwarranted and therefore (sic) contrary to the manifest weight of the evidence. Upon plaintiff's agreeing in open court to waive all back salary as a condition precedent, the court ordered his immediate reinstatement. We later consider and find this "agreement to waive salary" improper and irrelevant, but it should be noted that in his brief plaintiff says that not having been reinstated *immediately* and having been put to the expense of an appeal, he will make claim for all his back pay.

Defendants contend that the Commission's findings of fact were fully supported by the evidence; that the misconduct charged against plaintiff and supported by the evidence was of sufficient gravity to constitute cause for discharge; that the Commission has no power to suspend, but only the power to discharge; that where misconduct warrants a penalty other than discharge, the statute vests such disciplinary power in the appointing officer, not in the Commission. Plaintiff

149

contends that under the Administrative Review Act the court has power to affirm or reverse a decision in whole or in part and that the order in question was in effect a reversal in part; that the ruling of the Commission was harsh and not warranted by the evidence; that the loss of back pay was sufficient punishment for a minor infraction of rules of the Police Department; that the Commission had the power to suspend and that the punishment of discharge was cruel, unusual and contrary to the Federal Constitution.

The Commission's findings of fact are fully supported by the evidence. Eleven witnesses testified in support of the charges. Plaintiff was the only witness in his own behalf. No complaint is made with respect to the fairness of the hearing. The charges were based on plaintiff's abandoning his beat without permission, getting his automobile and driving it while he was supposed to be on duty, striking a parked automobile and doing damage which cost $485 to repair, failing to ascertain the extent of the damages, to leave his name and address, to report the accident, or to respond to final roll call or to calls from his superior officers. When found, plaintiff gave two highly conflicting accounts of his escapade. He finally relied, as he does here, on what he says was a blackout induced by high blood pressure. From our examination of the abstract and testimony, the Commission was warranted in not giving credence to his testimony.

It is not necessary to examine the evidence further because the order of the court below was not based on a consideration of the evidence to determine whether the findings were against the manifest weight. The court simply felt that the punishment of discharge was too severe. In other words, what the court measured was not the evidence but the gravity of the charge against the severity of the punishment. Having decided that the punishment did not fit the offense, the court did not remand the case to the Commission but

150

required plaintiff to waive his back salary and ordered his immediate reinstatement. This was the equivalent of suspension. In People ex rel. Kennedy v. Hurley, 348 Ill. App. 265 (petition for leave to appeal denied 414 Ill. 629) we held there was no legal basis for such an agreement and that the authority of an attorney to enter into it was questionable. Bergman v. Rhodes, 334 Ill. 137; Chicago & Vicinity Hungarian Benevolent Society v. Chicago & Suburb Hungarian Aid Society, 283 Ill. 99; Fessler v. Weiss, 348 Ill. App. 21. What the court did in the instant case was to substitute suspension for discharge in consideration of a waiver of claim for salary. That claim may be no claim at all because the right of plaintiff to recover was limited to the difference between what he earned during the period of his layoff and his back salary (Kelly v. Chicago Park District, 409 Ill. 91). On this the record is silent. There is no precedent and no statute which supports such a judgment.

The question then arises whether the cause should be remanded for further action. This depends on whether there was adequate cause for discharge, whether the Commission has the power to enter any order other than discharge, and whether, assuming the Commission has the power to suspend, the court has the power to review the judgment of the Commission with respect to the degree of punishment.

There are now pending in this Division similar cases involving five other policemen. Upon appeal, the court below in each instance, although entering different types of findings, ordered immediate reinstatement. In Foreman v. Civil Service Commission of Chicago, 7 Ill.App.2d 122, the court found that the findings of fact of the Commission were not contrary to the manifest weight of the evidence and put his order of reinstatement squarely on the proposition that discharge was too harsh. In Martin and Topinka v. Civil Service Commission of Chicago, 7 Ill.App.2d 128, a case involving

151

 .

two police officers charged with an offense having to do with money taken from a man charged with sexual offenses, the court held that the findings and decision of the Commission were not supported by the record and were against the manifest weight of the evidence, but before entering judgment stated that the penalty of discharge "is so severe that I would regard it as cruel punishment." The evidence supported the Commission's findings and the real basis for the court's decision was that the court considered the punishment too severe. In Watkins v. Civil Service Commission of Chicago, 7 Ill.App.2d 140, there was little controversy over the facts. The court simply disagreed with the ·Commission as to the duties and responsibilities of a policeman charged with permitting an accused person to escape. There is also pending the case of McCaffery v. Civil Service Board of Chicago Park District, 7 Ill. App.2d 164, in which a policeman was charged with accepting a bribe. The court first held that the case should be remanded because of the admission of hearsay evidence. Upon remandment a further hearing was had by the Board for the purpose of eliminating hearsay evidence and it again found the plaintiff guilty as charged. Upon review, the court below again reversed the order of the Civil Service Board and found that the charges against the plaintiff had not been proved by *clear and convincing evidence.*

It appears to us that these judgments were based on the erroneous assumption that courts have general jurisdiction over orders of the Civil Service Commission and that they may consider the severity of the punishment or matters in mitigation and may enter such orders as appear kind and merciful. These proceedings do not involve contests between litigants over civil rights but are, in effect, appeals from orders of public officials in the executive department to public officials in the judicial department. It is easy in such cases for courts to fall into the error of assuming their

function to be charismatic and to take on the character of a supercommission or superchief of police. That there is a marked difference of understanding between the appellate courts and the original reviewing courts with respect to the limitations of review in this class of cases appears to be supported by information collected in an article published in the Northwestern University Law Review, Vol. 47, pp. 660, 673 (1952–1953), entitled "Civil Service Discharge Procedure in Illinois." It is therefore necessary that we review the limitations imposed upon courts in this type of litigation.

■ We will first consider whether the Civil Service Commission has the power to enter an order of suspension if the cause should be remanded to it. If the Commission has no power to suspend, the court cannot find that it was erroneous for it to fail to exercise that power, because the court's function is that of review. The Commission has such powers as are conferred by the Cities Civil Service Act, and no others. Section 4 of the Act provides that the Commission shall make rules to carry out the purposes of the Act, and for examinations, appointments and *removals* in accordance with its provisions. (Ch. 24½, par. 42, sec. 4, Ill. Rev. Stat. 1953 [Jones Ill. Stats. Ann. 23.043].) Section 12 of the Act recites that no employee in the classified civil service shall be removed or discharged except for cause, upon written charges and after an opportunity to be heard. It then provides:

"Nothing in this Act shall limit the power of any officer to suspend a subordinate for a reasonable period, not exceeding thirty days."

The legislative policy thus established is clear. Two types of punishment are provided for—suspension not exceeding thirty days to be administered by the appointing officer, and discharge to be inflicted only after charges have been filed and a hearing had before the

153

Commission. Appointing officials and others are not permitted to impose longer periods of suspension. This is protection for employees as well as for the good of the service. If the offense deserves a penalty greater than suspension for thirty days, the penalty of discharge must be imposed.

A case not strictly analagous but strongly in point is People ex rel. Hurley v. Graber, 405 Ill. 331 (1950). There it was held that the power to remove did not include the power to demote. The court said (p. 343):

"The City Civil Service Act contains no provision granting power to the civil service commission to reconsider an appointment or to demote for cause after the employment or appointment is completed. . . . The city civil service commission exercises a limited or statutory jurisdiction, no presumption of jurisdiction obtains in its favor, and it must find in the statute its warrant for any authority claimed."

As in that case there was no power to demote, so here there is no power given by statute to suspend.

There appear to be only three cases of other jurisdictions that require consideration. In Simmler v. City of Philadelphia, 329 Pa. 197, 198 Atl. 1, it was held that a demotion constituted a removal. But as this is directly contrary to the decision of our Supreme Court in People ex rel. Hurley v. Graber, supra, we need consider it no further. In Goldberg v. City of Philadelphia, 279 Pa. 356, 123 Atl. 851, the Commission suspended a patrolman for six months without pay. The Director of Public Safety, the official in charge of the Police Department, appealed on the ground that the only power the Commission had was to acquit the defendant or to discharge him from the service. The court held that an examination of the legislation connected with the establishment of civil service showed that it was intended to confer upon the Civil Service Commission the powers previously held by another

154

body, which included the power of suspension. No such legislative background exists in Illinois. Greenfield v. Moses, 169 Misc. 389, 7 N.Y.S.2d 356, which was a decision by a trial court, has little relevance to the instant case. The court merely held that a fine of ten days' pay was not tantamount to a removal so as to require a hearing. We find that under the law of Illinois the Civil Service Commission of Chicago has no power to suspend.

The question still arises as to the extent to which the court may review the Commission's ruling on the adequacy of the cause for discharge. Section 12 of the Act (ch. 24½, par. 51, Ill. Rev. Stat. 1953 [Jones Ill. Stats. Ann. 23.052]) provides for discharge for cause but does not define the word "cause." In decisions rendered prior to the Administrative Review Act (Kammann v. City of Chicago, 222 Ill. 63, and Drury v. Hurley, 339 Ill. App. 33 (petition for leave to appeal denied 404 Ill. 627)), it was held that since the statute does not define cause, the legislature intended to leave its definition and application to the discretion of the Commission and that courts cannot reverse the findings of the Commission as to cause unless such findings are so unrelated to requirements of the service or so trivial as to be unreasonable and arbitrary. In the instant case the findings of cause by the Commission are without question directly related to the requirements of the service and are not trivial or arbitrary. The question is whether the Administrative Review Act, which now provides for review by the courts of the Commission's findings, permits the broadening of previous rulings so as to extend further the power of the courts.

The Cities Civil Service Act was passed prior to 1900. For a long time after the passage of the Act our courts refused to interfere with its administration. They saw confusion and disorganization in the executive branch and a danger to the courts in such inter-

155

ference. To give to one department the right to hire and operate, and to another and separate department, having no responsibility for operation, ultimate control of discipline, was to them unwise. So great was their abhorrence of interference by the courts with executive discipline, two acts of the legislature which sought to enlist judges in the administration of the Act were held unconstitutional. City of Aurora v. Schoeberlein, 230 Ill. 496; People v. City of Chicago, 234 Ill. 416; McQuade v. City of Joliet, 293 Ill. 515; Hopkins v. Ames, 344 Ill. 527; Schlau v. City of Chicago, 170 Ill. App. 19; Johaaski v. City of Chicago, 274 Ill. App. 423, and Drury v. Hurley, 339 Ill. App. 33. In City of Aurora v. Schoeberlein, supra, Mr. Justice Cartwright, speaking for a unanimous court, said that the Board of Fire and Police Commissioners of the City of Aurora was a branch of the executive department of the city government and its acts were purely ministerial or executive, and that the legislature could not confer upon the board any judicial power whatsoever. The court then distinguished between such acts and the exercise of judicial power which adjudicates upon and protects rights and interests of individuals, such as cases involving workmen's compensation or utility regulations, saying (p. 503):

"The cases in which appeals from non-judicial bodies to courts have been recognized have involved individual or property rights of which the court had jurisdiction under some other form of procedure, and belonged to classes of cases in which the court, acting judicially, could afford a remedy. This proceeding is not of that character."

Prior to passage of the Administrative Review Act the only proceeding for review of the Commission's ruling was by certiorari. In People v. Lindblom, 182 Ill. 241 (1899) the court held that in such a proceeding the only question was whether the Civil Service Commission had *jurisdiction*. Jurisdiction was determined

156

by having the record certified and therefrom the court ascertained whether the Commission had followed the form of proceedings legally applicable and whether its decision was based on evidence or was arbitrary and capricious. Nothing more was allowed. In 1922 in Funkhouser v. Coffin, 301 Ill. 257, the limitation on review was extended by enlarging the meaning of "jurisdiction." There it was held that a finding reciting nothing more than that plaintiff was "guilty as charged" was not sufficient to show *jurisdiction.* A specific finding of facts was required. In Cord v. Coffin, 226 Ill. App. 326 (1922) the court held that to show jurisdiction the proper method was to have the record recite the facts which the Commission found and that there was no need for a transcript of the evidence. Carroll v. Houston, 341 Ill. 531 (1931); Buttimer v. Geary, 229 Ill. App. 524 (1923); People ex rel. Holland v. Finn, 247 Ill. App. 53 (1927). In 1946 it was held that the production of a transcript of the evidence was essential to establish the *jurisdiction* of the Commission. People ex rel. Fosse v. Allman, 329 Ill. App. 296; Cartan v. Gregory, 329 Ill. App. 307.

In 1951 there came before a court below the case of People ex rel. Kennedy v. Hurley, 348 Ill. App. 265. In that case a patrolman had been discharged eleven years before upon a ruling by the Civil Service Commission giving in detail the testimony of witnesses who had appeared in support of the charges and finding with particularity that the patrolman, while purporting to be the head of a "Private Property Union" and while in police uniform, had sought to exact dues from private watchmen, to compel one watchman to take over the business of another, and to do other things obnoxious to those citizens. However, the Civil Service Commission was unable to produce the transcript of the evidence which had been lost during the intervening eleven years. On that technical ground the court felt impelled by reason of the decisions before men-

tioned to hold that no *jurisdiction* was shown and to restore the discharged patrolman. It is notable that thirty years after the Funkhouser case certiorari proceedings had become so enmeshed in technical requirements that it was possible to find some legal support for an order opposed to every sound principle of law, discipline and administration.

 An examination of the records in the cases now pending in this Division reveals how technical the procedure still is. The Administrative Review Act has been sustained and an appeal under it may be had to review all questions of law and of fact presented by the entire record. The findings and conclusions of the administrative agency on questions of fact are to be considered prima facie true and correct. The reviewing court is required to determine from the entire record whether the findings are against the manifest weight of the evidence. Section 11, Administrative Review Act (ch. 110, par. 274, Ill. Rev. Stat. 1953 [Jones Ill. Stats. Ann. 104.094(11)]); Logan v. Civil Service Commission, 3 Ill.2d 81, 86–7; Harrison v. Civil Service Commission of Chicago, 1 Ill.2d 137, 145–147; Oswald v. Civil Service Commission, 406 Ill. 506, 511; Drezner v. Civil Service Commission, 398 Ill. 219, 227.

The offense charged in the instant case is amply supported by the evidence, is related to the requirements of the service, and is not trivial. What then is the power of the court with respect to determining whether the discharge was warranted? In Murphy v. Houston, 250 Ill. App. 385, the appellant, a police officer, asserted that the charges filed against him with the Civil Service Commission did not state a cause for removal, and to this the Commission replied that it was empowered to determine cause for removal and that the charges were based on rules of the department, of which the appellant had knowledge. The court said (p. 394):

"While it is true that it is for the commission to decide what is cause for removal, it may not make an arbitrary and unreasonable rule in this respect. In Andrews v. King, 77 Me. 224, a statute provided that an employee might not be removed except for cause. The court held cause to mean some substantial shortcoming which renders continuance in his office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and a sound public opinion recognize as a good cause for his not longer occupying the place. This statement of the rule seems to be in harmony with the authorities. Throop on Public Officers; City of Chicago v. Condell, 124 Ill. App. 64, reversed on a different point in City of Chicago v. Condell, 224 Ill. 595; Heaney v. City of Chicago, 117 Ill. App. 405; Joyce v. City of Chicago, 120 Ill. App. 398, 403, affirmed in 216 Ill. 466; City of Chicago v. Gillen, 124 Ill. App. 210; Ramsay v. Shelton, 329 Ill. 432; State ex rel. Gill v. Common Council of Watertown, 9 Wis. 229."

In Secaur v. Civil Service Commission, 408 Ill. 197 (1951) the court reaffirmed the principle that courts of review do not have the right to reweigh evidence in cases of this character, but have only the power to determine if the findings are against the manifest weight of the evidence. In that case the Supreme Court held that absence from work was not the real issue, but whether the unexplained and apparently unexcused failure to assign work to an employee was sufficient basis for discharge. They held that it was not.

Nothing in the Administrative Review Act gives the court the power to determine the extent of the punishment, nor in the light of the past history of this litigation and in the light of existing conditions, is it in the public interest for this court to assume such a power.

Chicago has a population close to four million. Its Police Department consists of a force of 7,700 armed

men. The commanding officer is the Commissioner of Police. He must carry out and execute his authority through a chain of command consisting of deputy commissioners, captains, lieutenants and sergeants. In a large metropolitan area the problems are many. We have only to examine the Criminal Code, the Cities and Villages Act, the City Ordinances and numerous other statutory provisions to become aware of the enforcement difficulties confronting the Police Department. The carrying out of these numerous responsibilities requires a department staffed with proper personnel, well trained and organized. Discipline, fairly and certainly applied, is vital to this force of armed men who protect this city. This is essential not only for members of the department but to maintain the respect of the public. Without it, a department becomes incompetent and demoralized. This requirement of discipline was emphasized long ago by a famous and revered judge of the circuit court, Murray F. Tuley, whose comments were quoted in Coane v. Geary, 298 Ill. App. 199 (1939) at p. 206. We quote therefrom:

" 'A police force is peculiar, *sui generis,* you may say, in its formation and in its relation to the city government. It is practically an organized force resembling in many respects a military force, organized under the laws of the United States and equally as important as to the functions it is required to perform.

" 'And there is the same necessity of discipline—of regulation existing in the police department that exists in regard to the military department. Strict discipline must be enforced, and it must be enforced in a manner that is effective, and without the supervision or regulation of any other department of the state, and particularly, without any attempt on the part of the judicial department (which is a branch of the government entirely distinct and separate from the executive department) to regulate it in any way, and particularly, to regulate its discipline.' "

Punitive discipline in the Police Department of the City of Chicago is initiated by the Commissioner of Police. He files charges with the Civil Service Commission only after he has reached the conclusion that the offender should be discharged from the force. Thus at the outset these proceedings involve the exercise of judgment by an expert. In fact, we must assume that the head of the Police Department of the second largest city in the country is a leading expert in police matters. Not only is he in position to exercise a superior judgment with respect to the particular individual involved but he can judge the effect of the disciplinary action taken on the morale of his entire force. What happens to discipline when a judge substitutes his judgment for the judgment of this expert and restores to office and to a position under the Chief of Police one whom the Chief has deemed unfit for that purpose? The result is described in a book entitled "Police Administration" by O. W. Wilson, a leading authority on the subject, as follows, (p. 371):

"From that time on [the chief of police] will have a subordinate who hates him, who is disloyal to him, and who will do everything in his power to put the chief in a disadvantageous position, regardless of the damage that may be done to the department and to the quality of the service."

Protection of the employee is provided by the requirement that before he can be discharged, charges must be filed before the Civil Service Commission and a hearing granted to him. The Civil Service Commission while composed of laymen can employ experts and technicians to advise them and their day-to-day contact with the problems of the department gives them an opportunity for a far greater understanding of the requirements of discipline than any other agency. To charge such executives with the responsibility of policing the city while judges have the final say as to disciplinary measures creates a dilemma that would

161

frustrate and confuse an honest administration of the civil service law, while a corrupt and indifferent administration might well take advantage of it to shift the responsibility to the judiciary.

Not a single case has come before us in recent years in which it has been charged, much less proved, that politics or bias motivated the administration of the civil service. To the honest and dutiful policeman the civil service law has become a shield. The protection afforded him is real. The community has given these officers a security of employment which few, if any, in labor, industry, the professions, academic or business life have. It should be so because this is an employment which requires loyalty, courage and character of a high order. The other side of the coin is that these employees are subjected to pressures and temptations such as exist in no other occupation. A review of the cases of the past few years will reveal the sordid and evil character of these temptations. Discipline, as we have said, is vital or this force of armed men who protect the city can become a haven for bullies officially armed with guns or the instrument of corrupt forces looking for an opportunity to prey on the city's inhabitants. The Civil Service Act therefore must not be permitted to become a mantle for the corrupt and inefficient. If the court is to substitute its judgment for the judgment of the Civil Service Commission and of the Commissioner of Police as to disciplinary action that should be taken, it would in effect be substituting judicial discipline without responsibility for executive discipline with responsibility. The ultimate effect of such action would be a breaking down of the discipline and morale of the Police Department. Courts must accept the honest judgment of the Chief of Police and the Civil Service Commission, those arms of the executive department charged with administration of the police, with respect to the

162

proper discipline to be enforced when charges have been proved.

Our conclusions are as follows:

The Civil Service Commission does not have the power to suspend. It has only the power to determine whether the evidence supports the charges and then to impose the punishment of discharge.

■ As the Civil Service Commission has no power to suspend, courts in reviewing the rulings of that Commission cannot find that the Civil Service Commission erred for failure to impose a penalty less than discharge. Nor can the courts by indirection, such as requiring an agreement on the part of a plaintiff to waive his claim for back salary, accomplish the same result as suspension.

The court can only weigh the evidence for the purpose of determining whether the findings of the Commission with respect to the proof offered in support of charges are against the manifest weight.

■ The court can only review the nature of the offense and the penalty for the purpose of determining whether the offense was related to the requirements of the service and whether the ruling was arbitrary or capricious.

■■ The Civil Service Commission is not a judicial tribunal even though it has been called "quasi-judicial" in the sense that its findings could be examined on certiorari. The hiring and discharging of employees in the civil service is still an executive function.

In appeals from a Civil Service Commission there should be recognition by the courts that the relationship of the executive department to its employees is involved and that the discipline of an entire department may be affected. The distinction set forth in City of Aurora v. Schoeberlein, supra, between such cases and those involving agencies which regulate utilities

or deal with workmen's compensation should be maintained.

The judgment of the circuit court is reversed and the decision and findings of the Civil Service Commission are affirmed.

Judgment reversed.