William L. Foreman, Appellee, v. Civil Service Commission of City of Chicago, Stephen E. Hurley et al., as Civil Service Commissioners, Appellants.

Gen. No. 46,464.

First District, Second Division.
September 20, 1955.
Released for publication October 25, 1955.

John J. Mortimer, Corporation Counsel of City of Chicago, for appellants; L. Louis Karton, Head of Appeals and Review Division, and Arthur Magid, Assistant Corporation Counsel, both of Chicago, of counsel.

Thaddeus B. Rowe, and W. Elbert Washington, both of Chicago, for appellee; Thaddeus B. Rowe, and W. Elbert Washington, of counsel.

PER CURIAM.

Plaintiff, a patrolman in the Department of Police in the City of Chicago, filed this action under the Administrative Review Act to review an order of the Civil Service Commission of the City of Chicago which had found him guilty of misconduct and ordered him discharged from his position. The trial court after a hearing entered an order reinstating the plaintiff to his position conditioned on plaintiff's filing a waiver of all back salary. As a part of this order the court found (1) that the findings of the Commission were not contrary to the manifest weight of the evidence, but that the Civil Service Act gave the Commission power to punish or remove from the service for a period shorter than complete discharge from the service; (2) that the decision of the Commission was harsh and not warranted by the evidence; and (3) that a waiver by plaintiff of all back salary was sufficient punishment, under the evidence, for his failure to obey the rules and regulations of the Department of Police. The issues raised on this appeal by the Commission are based on these findings and the action of the trial court. They are similar to those involved in the case of Walter G. Nolting v. Civil Service Commission of City of Chicago et al., 7 Ill.App.2d 147.

The relevant facts as revealed by the record are that on November 28 and 29, 1951, the plaintiff was assigned to a tour of duty that commenced at 12:00 o'clock midnight and ended at 8:00 o'clock a. m. Prior to reporting for duty on the evening in question he went to a prize fight at the Chicago Stadium and remained there until about 9:30 p. m. When on duty he was required to call in hourly by telephone from post pull boxes. On the morning of November 29, he made his first, second and third calls, the last one being at 2:29 a. m., and made no further calls thereafter. He left his post shortly after his 2:29 a. m. call and went to his home. He remained there until about 5:15 a. m.

123

when he was taken into custody by Sergeant Kelleher of the Seventh District Station.

Sergeant Kelleher testified that their station had received a call from a Mr. Trice who reported he was having difficulty with patrolman Foreman. He and a uniformed squad met Mr. Trice and went to plaintiff's home. They were admitted by plaintiff who was in uniform. Trice testified that he called the police because his wife, from whom he was separated, was at Foreman's home. Foreman's wife was visiting at her mother's home. Trice and his wife had been friends of the Foremans. He called his wife on the telephone at Foreman's home and asked to see her. He arrived at Foreman's home a few minutes after midnight. His wife told him that she was there to wash some of her clothes. He told her she should not be there and asked her to go either to her father's home or to one of Mr. Trice's relatives in the city. Trice said Foreman came in at about 2:00 o'clock in the morning and entered into the discussion as to where Mrs. Trice should go. Mrs. Trice refused to go with her husband and insisted that plaintiff take her to the streetcar and that she would go to her home. There was an altercation between Trice and plaintiff when plaintiff sought to drive Mrs. Trice away in his car. Trice tried to prevent plaintiff from doing this by jumping on the hood of the car. Plaintiff pushed him off and drove away with Mrs. Trice. Trice then called the police station.

Sergeant Kelleher took plaintiff before Lieutenant Collins at the station to which plaintiff was assigned. The Lieutenant asked him why he was absent from his post. Plaintiff made no explanation at that time. In a written report made later he stated that the reason for leaving his post was to go home to eat. At the hearing before the Commission he stated for the first time that he had eaten some food that did not agree with him and his "stomach was griping him." He

124

therefore took a laxative to relieve the condition before reporting for duty. While on duty he developed diarrhea and soiled his clothes, and for that reason he returned to his home to make a change and to have something to eat to relieve his stomach. He stated that before leaving his post at about 3:00 a. m., he did make a call to the station. He could not reach the sergeant who was in charge of the desk but left word for them to call him at home at 3:30.

The officer in charge of the desk who received the hourly reports on the pulls said that he was on duty at all times and received no call from plaintiff after his pull at 2:29 a. m. Lieutenant Collins testified that when Mr. Trice and plaintiff appeared before him plaintiff made no statement that he was sick, had diarrhea or soiled his clothes. Plaintiff admitted that at no time did he inform Lieutenant Collins of these facts. When Mr. Trice told Lieutenant Collins the details of the altercation plaintiff did not deny it. Plaintiff admitted that no one gave him permission to leave his post and that the only person who could have given such permission and who did not was Lieutenant Collins.

Mrs. Trice testified for plaintiff. She said she came to plaintiff's home about 8:30 in the evening to wash some clothes. She did not know that plaintiff's wife was away. She substantiated his story about going to the stadium, his return home and the taking of some medicine. She said he called her a little before 3:00 o'clock and told her that he was ill and was coming home to change his clothes and that he was going to call the station. She stated that plaintiff changed his clothes which had been dirtied as a result of the diarrhea. When plaintiff came home she admitted that her husband was there and that she was having an argument with him. She denied there were any difficulties between her husband and plaintiff. She said that

plaintiff told them he did not want a fight in his home and that they had to leave. She admitted that Foreman took her in his car and that her husband attempted to stop them.

Five witnesses testified against plaintiff at the hearing before the Civil Service Commission. Plaintiff and Mrs. Trice were the only ones who testified on his behalf.

It is clear from an examination of the record that the charges against plaintiff of abandoning his post during the tour of duty were amply substantiated by the evidence. The charges and ultimate findings were not arbitrary or motivated by caprice, politics or bias. The charge against the plaintiff of leaving his post of duty without being regularly relieved and without permission from his superior officer is a very serious offense. If we were to permit the trial court to substitute its judgment for that of the Commission under such circumstances, enforcement of discipline in a police force of over 7,000 men would soon be meaningless. Our opinion in the Nolting case discusses each of the issues raised by the Commission on the appeal in the instant case and we adopt the reasoning and conclusions in that case as our opinion on those issues in this appeal.

Plaintiff makes the contention for the first time on appeal that since Section 12 of the Civil Service Act, Ill. Rev. Stat. 1953, ch. 24½, par. 51 [Jones Ill. Stats. Ann. 23.052], limits the suspension period of 30 days, the hearing on the charges must be held within such 30-day period; that the 30-day period having expired without a hearing, plaintiff's suspension terminated and he was automatically reinstated to his position; that, therefore, the Commission had no jurisdiction thereafter to try him.

The record shows that plaintiff was suspended by his superior officer on December 4, 1951. The charges

126

were filed against him with the Commission on December 12, 1951. The hearing pursuant to notice was set for January 9, 1952, but at the request of plaintiff the case was continued to February 6, 1952. The question raised by this issue is whether it is mandatory under the statute that an officer against whom charges of misconduct are filed with the Commission must be suspended in order that the Commission have jurisdiction to try him. The statute does not impose such a requirement. It is discretionary with the department employing the particular officer involved as to whether he should be suspended during the pendency of charges against him before the Commission. The statute, it is true, limits the length of this suspension. There is, however, no express language that charges must be filed, witnesses heard and the report of the Commission disposing of the charges filed within the 30-day period. We conclude that it would be unreasonable to find that it is the statutory intent to impose a fixed period of such short duration within which the Commission must hear and determine a cause or else lose jurisdiction thereof.

The judgment of the Superior court is reversed and the decision and findings of the Civil Service Commission are sustained.

Judgment reversed.