People of State of Illinois, ex rel. Saul J. Jones, Appellee, v. Civil Service Commission, William A. Lee et al., Appellants.

Gen. No. 47,210.

First District, First Division.

March 10, 1958.

Released for publication May 6, 1958.

John C. Melaniphy, Corporation Counsel of City of Chicago (Sydney R. Drebin, and Claude E. Whitaker, Assistant Corporation Counsel, and Robert J. Collins, Special Assistant Corporation Counsel, of counsel) for defendants-appellants.

George Dorman Carry, for plaintiff-appellee.

JUSTICE McCORMICK delivered the opinion of the court.

This is a mandamus action whereby plaintiff seeks restoration to a civil service eligible list for patrolman

in the police department of the city of Chicago and certification to the said position. Plaintiff's name had been stricken from the eligible list by the Civil Service Commission after a hearing, because of his bad character, dissolute habits and immoral conduct. The trial court, on complaint and answer, and without hearing any evidence, entered a judgment order finding that the decision of the Civil Service Commission and the striking of plaintiff's name from the eligible register were arbitrary and invalid. The court ordered the issuance of a writ of mandamus directed to the commission and its members commanding them to restore plaintiff's name to the eligible list for patrolman and to approve his certification to said position.

On or about January 13, 1954 Saul Jones, the plaintiff, made written application to take the civil service examination for patrolman in the Chicago police department. In March, 1955 he passed the physical and mental examination held by the Civil Service Commission of the city of Chicago and his name was posted on the eligible list in August, 1955. In the application filed by him in order to take the examination he had truthfully stated that he had never been arrested. In January, 1955 a charge of bastardy was filed against him in the Municipal Court, which action remained pending until February 16, 1956. After the plaintiff's name had appeared on the eligible list and after his arrest on the bastardy charge he filled out a questionnaire in which he stated that he had been arrested for nonsupport charges and that he was instructed to pay $8 per week to the woman involved. The director of personnel for the police department on August 26, 1955 wrote a letter to the commissioner of police, in which he recommended that the plaintiff not be accepted as a patrolman because the writer considered him of immoral character and asked that his case be referred to the Civil Service Commission and that he be given a hearing. On August 27, 1955 the commissioner of po-

lice wrote to the commission enclosing the letter from the director of personnel and recommending that the plaintiff not be accepted.

On August 31, 1955 the commission addressed a notice to the plaintiff directing him to appear before the commission on September 7, 1955 to show cause why his certification to the position of patrolman should not be disapproved, and a hearing was held before the commission on September 7, 1955. From the testimony of the plaintiff at the hearing before the commission it appears that he had in January, 1955 been ordered by the court to pay $8 per week to the mother of the child and the bastardy case was then continued. He was 23 years old and unmarried, and the girl in question was 19 years old. From his testimony it appeared that he had been keeping steady company with her for a period of at least six months before he was arrested. He did not deny that he was the father of the child and his testimony left a very definite inference that the relations between him and the girl were such that he might have been the child's father. After the investigation and hearing of September 7, 1955 the commission entered an order striking plaintiff's name from the register of patrolmen and notified plaintiff of this action by letter dated September 8, 1955. On February 16, 1956 the plaintiff was discharged on the bastardy charge after trial in the Municipal Court of Chicago.

There apparently was no transcript of the evidence taken at the Municipal Court hearing. The plaintiff obtained a photostatic copy of the record in the case, which record showed his discharge, and he exhibited the same to the secretary of the Civil Service Commission with a request for a rehearing. He was then notified that his name had been permanently removed from the eligible list and that the action of the commission was final. In May, 1956 plaintiff made a for-

mal written demand upon the commission for restoration to the eligible list and thereafter filed this suit.

The defendants contend that all the proceedings before the Civil Service Commission and their decision to strike the plaintiff's name from the eligible list of patrolmen were in accord with the statutes of the State and the rules of the Civil Service Commission, that the action was not arbitrary, and that consequently it was error to order the issuance of the writ of mandamus. On the other hand the plaintiff contends that the trial court, since it had before it the record of the Municipal Court of Chicago finding the plaintiff not guilty of the charge of bastardy, had a right to enter a judgment order finding that the action of the Civil Service Commission in striking the name of the plaintiff was arbitrary and invalid.

Section 6 of Rule II of the Rules and Regulations of the Civil Service Commission is in part as follows:

"Disqualifications. Proof of . . . bad character, dissolute habits, immoral conduct . . . shall be grounds for . . . removal from an eligible register . . . provided that any such . . . eligible . . . shall be given an opportunity to be heard in his own defense before final action by the Commission . . . ."

It has repeatedly been held that before a mandamus writ may issue it must clearly appear that the petitioner has a clear right to the relief he seeks and that mandamus does not lie to control or review the discretion of an inferior tribunal. It has also been held that in mandamus actions against administrative officers, such as the commission in this case, the courts will not inquire into the merits of the matter so that it may substitute its own judgment or discretion for that of the administrative body, that where the administrative body has the right to exercise judgment and discretion mandamus will not lie to direct how such discretion shall be exercised, and it can only provide a

40

remedy against arbitrary action and a clear abuse of discretion. People v. Allman, 382 Ill. 156, and cases therein cited.

 In the instant case the question was as to whether or not the plaintiff had a bad moral character. From the evidence the commission could have properly found that the plaintiff had for a period of six months or longer been indulging in sexual relations with a 19 year old girl. It is vital to the protection and safety of the city of Chicago that police officers should be men of integrity and should not have dissolute habits or indulge in immoral conduct. "The many cases which have come before us reveal the temptations which beguile the weak and the venal. People v. Moretti, 6 Ill. 2d 494; Foreman v. Civil Service Commission, 7 Ill. App.2d 122; Martin and Topinka v. Civil Service Commission, 7 Ill.App. 128; Nolting v. Civil Service Commission, 7 Ill.App.2d 147; McCaffery v. Civil Service Board, 7 Ill.App.2d 164, and many others." Rose v. Civil Service Commission, 14 Ill.App.2d 337. The law gives the right to the Civil Service Commission to determine in its discretion whether the applicants for the position of police officer possess the necessary prerequisites of character to be certified to that position and the court cannot substitute its judgment for that of the commission, nor can it consider evidence which was not before the commission at the time when it made its finding. The trial court had no right to consider on the issue before it any matter subsequent to the date of the hearing before the Civil Service Commission. The record of the Municipal Court indicating a subsequent discharge of the plaintiff in the bastardy case was not properly before the trial court. The Civil Service Commission on the record before it acted within its discretionary powers and in accordance with its rules and the State statutes. Its decision in no sense could be considered arbitrary.

41

■ The question as to whether or not under any circumstances mandamus was a proper action was not raised either in the trial court or before us. However, there is grave doubt as to whether since the passage of the Administrative Review Act the proceedings should not be under that Act rather than by way of a petition for a writ of mandamus. Section 2 of the Act (par. 265, chap. 110, Ill. Rev. Stat. 1957) provides:

"This Act shall apply to and govern every action to review judicially a final decision of any administrative agency where the Act creating or conferring power on such agency, by express reference, adopts the provisions of this Act. In all such cases, any other statutory, equitable or common law mode of review of decisions of administrative agencies heretofore available shall not be employed after the effective date hereof."

Section 1 relating to definitions defines the terms "administrative decision" or "decision" as any decision, order or determination of any administrative agency rendered in a particular case which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency. See People ex rel. Vestuto v. O'Connor, 351 Ill. App. 539, at p. 544.

In Moline Tool Co. v. Dept. of Revenue, 410 Ill. 35, the court says:

"This action was instituted under the Administrative Review Act, which was adopted in 1945. (Ill. Rev. Stat. 1949, chap. 110, pars. 264–279, incl.) Prior to its enactment, there was diversity and uncertainty in the methods by which judicial review of the decisions of administrative agencies might be secured. (Sullivan, Judicial Review in Illinois (1949) Illinois Law Forum, 304; Davis, Review of Administrative Action, 44 Ill. Law Rev. 565 at p. 625.) The statute was designed to provide a single uniform method by which the decisions of most of the administrative agencies of State

government could be judicially reviewed. To that end, section 2 of the act prohibits the employment of the pre-existing methods of securing judicial review.

". . . The only remedy formerly available to the taxpayer was statutory *certiorari* to review the administrative decision. . . . [Citing cases.] A proceeding under the Administrative Review Act has supplanted the former statutory *certiorari*."

In Thompson v. Roberts, 9 Ill.App.2d 93, the plaintiff sought a writ of mandamus to restore him as a member of the fire department of the City of Paris, Illinois. In his complaint in a second count he prayed for a judicial review of the decision of the Board of Fire and Police Commissioners under the Administrative Review Act. The defendants filed a motion to strike the amended complaint. The Circuit Court in a memorandum opinion found that the original petition for mandamus should be dismissed because the plaintiff's remedy was under the Administrative Review Act. The Appellate Court said:

"To the extent that mandamus is an available remedy, it could be described as a 'mode of review' within the terms of Section 2 of the Administrative Review Act which 'shall not be employed' in those cases coming within the terms of that Act."

The question as to whether the Administrative Review Act has not supplanted a petition for a writ of mandamus in proceedings such as those before us was not raised in or passed on by the trial court; neither was it urged before us. Before this question is passed on by a reviewing court that court should have the benefit of briefs and argument of counsel. We make no finding on this question.

The judgment order of the Circuit Court is reversed.

Judgment order reversed.

SCHWARTZ, P. J. and ROBSON, J., concur.