Arthur Taylor, Jr., Plaintiff-Appellee, v. Civil Service Commission, of the City of Chicago, and Commissioners Dolores H. Sheehan, President, Albert W. Williams, Member, John J. Ahern, Member, and James S. Osborne, Secretary, Defendants-Appellants.

**Gen. No. 48,046.**

First District, Second Division.

November 14, 1961.

John C. Melaniphy, Corporation Counsel, of the City of Chicago (Sydney R. Drebin and Robert J.

Collins, Assistant Corporation Counsel, of counsel), for appellants.

R. Eugene Pincham, and Charles B. Evins, of Chicago, for appellee.

ON REHEARING

MR. JUSTICE BURKE delivered the opinion of the court:

Arthur Taylor, Jr., filed a complaint to review an order of the Civil Service Commission of the City of Chicago which found him, a patrolman in the Police Department, guilty of conduct unbecoming a police officer and the unlawful use of a weapon, in that he sexually attacked Mrs. Margaret Cortez at the point of a revolver. The Commission ordered him discharged. Plaintiff alleged that the findings and decision of the Commission were contrary to the manifest weight of the evidence because the identification of him was speculative, the police record supports his defense of alibi, his good reputation and character were unimpeached, and the Grand Jury twice returned a "no true bill" in his favor. The defendants appeal from the judgment reversing the Commission.

Defendants insist that the findings and decision of the Commission are supported by convincing evidence, are not against the manifest weight of the evidence and should not be set aside. Plaintiff, arguing that the finding and decision are contrary to the manifest weight of the evidence and that the judgment should be affirmed, says that his identification as the perpetrator is not convincing, that his alibi and good reputation are positively established and unimpeached and that the testimony of the prosecutrix is uncorroborated. Although the question of a crime

49

was involved, the rule of reasonable doubt in criminal procedure does not control. Sundquist v. Hardware Mut. Fire Ins. Co., 371 Ill 360, 21 NE2d 297. Mrs. Cortez, a married woman 33 years of age, testified that about 12:30 a. m. on March 18, 1956, she was raped by a colored man at the point of a gun about a block and a half from her home in Chicago. She made no effort to escape nor did she scream for help because the assailant at all times held a gun in his hand. She feared for her life and she was frightened. As soon as her assailant released her she ran home. Within 15 or 20 minutes she telephoned the neighborhood police station telling of a disturbance. When two police officers arrived at her home in response to the call she told them of the rape. In another half hour two detectives arrived at her home to whom she repeated the incident, whereupon they took her to a hospital. Police Officer Robert M. King corroborated the testimony of Mrs. Cortez as to her complaint of the rape and being taken to the hospital. The assault took about five minutes. A period of about 15 minutes elapsed from the time her assailant accosted her until she fled. Within this period she had an opportunity to observe him. On March 28, 1958, she was taken to police headquarters to examine a book containing photographs of policemen attached to the 24th District, to which officer Taylor was then assigned. The book contained 100 photographs, 20 of which were photographs of colored policemen. She identified the photograph of plaintiff as her assailant without hesitation or suggestion from the police. On the following day she appeared at a show-up of 11 colored men. The men in the line-up were asked to repeat the words that her assailant had used on the night of the attack. She again without hesitation or suggestion from anyone pointed out plaintiff as her assailant. She also identified him by his voice.

50

In giving her statement of the description of the assailant to the police immediately following the attack, Mrs. Cortez gave the age, height, weight, apparel and the type of gun he used. Subsequently she said that she noticed something peculiar about the face of her assailant. The trial judge in his opinion said there were discrepancies in the identification. Dr. T. K. Lawless, a competent and distinguished dermatologist, testified for plaintiff that he had been treating him professionally since 1953, that plaintiff had a severe case of acne of the face and a severe postule condition of the scalp, that officer Taylor's case "was about the worst he had ever seen," that there was an unusual intensity in his case, that there were many cysts and bumps on his face, that the mottled scarring of his face was most unusual, and that the condition of patient's face, head and shoulders existed in March, 1956. He testified that the condition of patient's face was visible to the naked eye and that his condition has improved "very markedly" since March, 1956. He further testified that in his opinion Taylor has dark brown skin. Mrs. Cortez's description to the police was that her assailant had light brown skin.

Plaintiff testified that he left the police headquarters at State and 11th Streets "at approximately 12:15" and that he drove from the headquarters to his home in his car. The headquarters is about 11 miles from the place where the attack took place. Plaintiff testified further that on March 17, 1956, he drove police squad car 31 out of the headquarters at 4:05 p. m. and returned the car at midnight. However, the signature purporting to be that of plaintiff on the record of the return of the car at midnight is not his signature. His partner in the squad car, George Waters, was not called to testify by plaintiff or defendants. No one from the police garage was called to testify. Officer Taylor lived with his wife

and three children about 6 blocks from the scene of the assault upon Mrs. Cortez. He lived there 5 years. Father Jerome, a Catholic priest at St. Anselm's Church for 12 years, testified that he knew officer Taylor since he came to be "a member of the church about 6 years," that he would see and greet him every Sunday, that he had a good reputation as a "peaceful and law abiding citizen," that he knows his reputation for truth and veracity and would believe him under oath. It was stipulated that if 16 witnesses present at the hearing were called to the stand they would testify that they were acquainted with the general reputation of plaintiff in the community in which he lived for truth and veracity, and that the reputation is good.

■ The Administrative Review Act does not purport to give a reviewing court the right to reweigh the evidence. It has been repeatedly held that the only function of courts reviewing orders of administrative agencies is to consider the record and determine whether the findings and decision of the administrative agencies are against the manifest weight of the evidence. Drezner v. Civil Service Com., 398 Ill 219, 75 NE2d 303; Oswald v. Civil Service Com., 406 Ill 506, 94 NE2d 311; Downey v. Grimshaw, 410 Ill 21, 101 NE2d 275; Brown Shoe Co. v. Gordon, 405 Ill 384, 91 NE2d 381; Rosenfeld v. Zoning Board of Appeals of Chicago, 19 Ill App2d 447, 154 NE2d 323; Logan v. Civil Service Commission, 3 Ill2d 81, 119 NE 2d 754; Foreman v. Civil Service Commission, 7 Ill App2d 122, 129 NE2d 245; Nolting v. Civil Service Commission, 7 Ill App2d 147, 129 NE2d 236; McCaffery v. Civil Service Board, 7 Ill App2d 164, 129 NE 2d 157; Miglieri v. Lee, 16 Ill App2d 545, 149 NE2d 193; Board of Ed. v. County Bd., 32 Ill App2d 1, 6, 176 NE2d 633. The credibility of witnesses can best be determined by those seeing and hearing them testify.

 We think that the findings and decision of the Commission are supported by competent evidence and are not against the manifest weight of the evidence. The judgment is reversed and the cause is remanded with directions to enter judgment for defendants and against plaintiff affirming the findings and decision of the Commission.

Judgment reversed and cause remanded with directions.

FRIEND, P. J. and BRYANT, J., concur.